489 P.2d 1197

Helen Juanita MAHAN, Individually and as Executrix of the Estate of Terrell B. Mahan, Deceased, Appellant,

v.

T. Gordon MAHAN and Doris I. Mahan, husband and wife, Appellees.

No. 10443.

Supreme Court of Arizona, In Division.

Oct. 29, 1971.

Rehearing Denied Nov. 23, 1971.

Locklear & Wolfinger, by H. J. Wolfinger, Prescott, for appellant.

Meyers & Garbarino by William J. Meyers, Stevenson, Warden & Smith by Robert W. Warden, Flagstaff, for appellees.

CAMERON, Justice.

Plaintiff brought this action individually and as executrix of the estate of her deceased husband. She sought an accounting and division of properties of a partnership in which her husband had been a partner. From a decision of the Superior Court of Coconino County granting her what she considered inadequate relief, she appeals.

We are called upon to consider the following questions:

1. Did the court err in determining that plaintiff's husband's partnership share should be measured by his capital account?

2. Did the court err in accepting the book value as the proper valuation of the property?

3. Did the court err in failing to direct the liquidation and sale of the remaining partnership assets?

Plaintiff is the widow of Terrell B. Mahan, who died 15 July 1966, in Prescott, Arizona. She is suing Gordon Mahan in her own right and as executrix of Terrell Mahan's estate, which is being probated in Yavapai County, Arizona.

When plaintiff married Terrell Mahan in 1948, a construction and agriculture partnership existed between Terrell and his brothers, Gordon and Merwin. (Merwin withdrew from the partnership in 1962 and is not involved in the lawsuit.) The partnership was an equal one in the sense that the profits were divided on an equal basis, first three ways, and then two.

In 1964 the partnership traded one of the partnership properties for a home into which Terrell and his wife moved. The property was taken in the name of Terrell and his wife. The bookkeeper reduced the capital account of Terrell and his wife by $23,000. In short, Terrell and his wife received a house worth $23,000, more or less, in exchange for reducing their capital account to $23,000 less than Gordon's.

At about this time (1964–1965), the partnership became inactive, and it remained inactive through Terrell's death in 1966 and the bringing of the present lawsuit in 1969. Gordon, the surviving partner, did nothing toward settling the affairs of the partnership and accounting to the executrix until Terrell's widow brought this suit.

The principal partnership asset at Terrell's death and the time of the lawsuit was the remainder of a block of Coconino County land bought in 1950 and known as the Red Lake Ranch. In 1960, the partnership sold a portion of the ranch for $80,000, leaving 1,752.34 acres of patented land, plus 1,843 acres of State leased land. In December, 1961, the partnership made an aborted sale of practically the same block owned at Terrell's death. The sale, for $284,200, fell through in 1963, and the Mahan brothers regained the land. In 1963, an appraiser valued the land at $43,868.44, and in 1965 an accountant, for federal tax purposes, lowered the value on the partnership books to $15,622.61.

The balance sheet of the partnership as of 31 December 1965 showed $33,274.61 worth of assets. The principal components of this amount were $15,622.61 for the Red Lake Ranch, two investments with a total book value of $9,150, but market values of $900 and $0 respectively, and an oil lease listed at $4,000 but actually worthless.

## PARTNERSHIP SHARE

The defendant advanced, and the trial court accepted, the contention that since Terrell's capital account was reduced by $23,000 to $4,005.45 and was one-eighth of the value of the total capital account ($31,308.06), Terrell's widow should receive, in distribution, one-eighth of $33,274.31 or $4,159.29.

To illustrate, the amounts in controversy are as follows:

PARTNERSHIP ASSETS:

| | | |
|---|---|---|
| Red Lake Ranch | $15,622.61* | |
| Investments | 9,150.00** | |
| Oil Lease | 4,000.00*** | |
| Miscellaneous | 4,502.00**** | |
| | $33,274.61 | |

\* Sold in 1961 for $284,200; appraised for $43,868.44 in 1963; the $15,622.61 was a figure allowed by the I.R.S. for tax purposes after an aborted sale.

\*\* Represents 7,500 shares of Unita Finance Company, which the plaintiff's (and partnership's) accountant testified was worthless, and 180 shares of Arizona Livestock Production Credit Association, which the accountant testified was worth $5.00 per share or $900.

\*\*\* Valueless, according to the accountant.

\*\*\*\* Subject to extreme disagreement on several items.

CAPITAL ACCOUNT:

| | |
|---|---|
| Terrell | $ 4,005.45 |
| Gordon | 27,302.61 |
| | $31,308.06 |

Plaintiff contends that after payment of the partnership debts, she should share with Gordon on a 50-50 basis. We agree with plaintiff as long as it is understood that the capital account, as used by the bookkeeper in this case, represents a debt of the partnership.

Upon liquidation, the rules of payment are governed by § 29–240 A.R.S., which decrees that the liabilities of the partnership shall rank in the following order of payment:

"(a) Those owing to creditors other than partners.

(b) Those owing to partners other than for capital and profits.

(c) Those owing to partners in respect of capital.

(d) Those owing to partners in respect of profits."

■ "The capital of the partnership is the amount specified in the agreement of the partners, which is to be contributed by the partners for the purpose of initiating and operating the partnership business." Barrett & Seago, Partners and Partnerships, Law and Taxation, Vol. I, § 3.1, p. 169. Thus, ordinarily we would look to the initial contributions for a determination of the amounts "owing to partners in respect of capital." While the general rule is that the amount of capital may not be changed absent consent of all the partners, the partners in this case have apparently conceded to adjustments in their capital accounts. See Barrett, supra at 170. Thus, we accept, for purposes of this case, adjustments in plaintiff's and defendant's capital accounts to $4,005.45 and $27,302.61 respectively.

"The distribution of partnership assets in the course of winding up consists, first of all, in the payment of creditors other than partners. Then come the claims of partners other than those for repayment of capital contributions or profits, such as claims for advancements made by partners. * * * After this, *partners are entitled to return of their re-*

*spective capital contributions.* * * *
Finally, *any remaining balance of part-
nership property is distributable as prof-
its.*" Judson A. Crane, Handbook on the
Law of Partnership, 2nd ed., § 90, p. 477.
(Emphasis added)

In accord, Rowley, Modern Law of Part-
nership, Vol. II, § 673. These theories are
supported by § 29–218 A.R.S., which pro-
vides as follows:

"Rules determining rights and duties of
partners

\*    \*    \*    \*    \*    \*

"1. Each partner shall be repaid his con-
tributions, whether by way of capital
or advances to the partnership property
and share equally in the profits and sur-
plus remaining after all liabilities, in-
cluding those to partners, are satisfied
\* \* \*."

■ Therefore, whether the money left
after satisfaction of creditor's claims and
recoupment of partnership capital is termed
profits or surplus, the clear mandate of
the authorities is that, absent agreement to
the contrary, it is divided equally as profits.

■ As mentioned earlier, the defendant
in this case has placed reliance on § 29–
242 A.R.S., relating to continuation of the
business when a partner dies. In the in-
stant case, the business was not continued
by the surviving partner. Quite the con-
trary. The partnership remained dormant
and nothing was done until suit was
brought by the plaintiff to compel an ac-
counting. Where the efforts of one part-
ner in the production of profits in an ac-
tive partnership cease, it is apparent that
he no longer bears full entitlement to his
respective share of the profits. In this
case, however, where the partnership has
been and continues to be inactive, any ap-
preciation of worth is due to the nature of
the partnership property rather than the
effort of the surviving partner. Thus, we
hold that any profit or surplus resulting
shall be shared equally.

■ This conclusion is buttressed by the
situation confronting plaintiff and her hus-
band Terrell when they gave up $23,000
of their capital account for a $23,000 home.
They knew that the partnership had few
or no debts and owned a piece of property
that had sold for $284,200 a few years
previous. If the value of the land had
stayed reasonably constant in the interim,
the partnership would have been worth
over $300,000. It is highly unlikely that
the plaintiff and her husband intended,
when they gave up $23,000 of their capital
account for a $23,000 house, that they were
actually giving up not $23,000 but well
over $100,000.

## DID THE COURT ERR IN ACCEPT-
## ING THE BOOK VALUE AS THE
## PROPER VALUATION OF THE
## PROPERTY?

■ The answer to the question of
whether the court erred in accepting the
book value of the assets can be answered
by looking at the figures we have recon-
structed. Every single component of the
$33,274.61 book value has been strongly
contested. The Red Lake Ranch, for ex-
ample, was sold in 1961 for over $280,000,
but has an arbitrary book value of $15,-
622.61. An "investment" valued at $9,150
is made up of two investments, one worth-
less and the other worth only $900. In
short, the book values are completely arbi-
trary and should not have been used.

A very similar situation confronted the
Court of Appeals in Hurst v. Hurst, 1
Ariz.App. 227, 232, 401 P.2d 232, 237
(1965). The court there stated, "The book
value[s] assigned to the tangible assets
* * * are arbitrary valuations and can-
not be applied." Defendant attempts to
distinguish Hurst, supra, by arguing that in
Hurst no one strongly pushed for using
book value while defendant is pushing for
that solution here. However, that distinc-
tion is not persuasive, for the Court of
Appeals in Hurst was faced with the prob-
lem of the relative fairness of different
methods of asset valuation of partnerships,
and concluded that the book value was
arbitrary.

Our determination that the trial court erred in accepting book value is in accord not only with the Arizona case of Hurst v. Hurst, supra, but with general principles of partnership accounting. The normal rule is that book value is only used in ascertaining the respective shares when there is an explicit contractual provision to that effect, and even then is not used where the facts of the case make it inequitable to do so. See 47 A.L.R.2d 1425. Here there was no contractual provision mandating the use of book value, and even if there were, the facts show book value in this case to be so disproportionate to possible real values that it would be inequitable for it to be used anyway.

## DID THE COURT ERR IN FAILING TO DIRECT THE LIQUIDATION AND SALE OF THE REMAINING PARTNERSHIP ASSETS?

Having decided that book value should not be used in valuing the partnership assets, we are forced to conclude that the trial court should have granted plaintiff's wish to have the assets liquidated. Hurst v. Hurst, supra; Carrasco v. Carrasco, 4 Ariz.App. 580, 422 P.2d 411 (1967); 68 C.J.S. Partnership § 316–b, p. 828.

§ 14–541 A.R.S. also lends support to our position:

"A. The surviving partner of a decedent may continue in possession of the partnership property and settle its affairs, but the interest of decedent in the partnership shall be included in the inventory and appraised as other property.

"B. The surviving partner shall settle the affairs of the partnership without delay, account to the executor or administrator and pay over such balances as may from time to time be payable to him as the personal representative of decedent.

"C. Upon application of the executor or administrator, the court may order the surviving partner to render an account and if he neglects or refuses may compel such accounting by attachment for contempt. The executor or administrator may maintain against the surviving partner any action which decedent could have maintained."

## CONCLUSION

We hold that the partnership assets must be liquidated, and that the general creditors be paid first. If the assets are insufficient for this purpose, the estate and Gordon should be charged equally for the losses. If the assets are more than sufficient then the surviving partner should be paid first up to the amount of $23,297.16 to set off the withdrawal from the capital account by Terrell. Any amount left over should be equally divided between Terrell's estate and the surviving partner, Gordon Mahan.

Reversed and remanded for further proceedings not inconsistent with this opinion.

STRUCKMEYER, C. J., and LOCKWOOD, J., concur.