Marjorie E. CHAPMAN and Fred A. Eppenberger, Executors of the Estate of William A. Chapman, Deceased, Plaintiffs-Respondents,

v.

James E. DUNNEGAN, John S. Vickroy and Arrow Realty Company, A Partnership, Defendants-Appellants.

Nos. 43640, 43626.

Missouri Court of Appeals,
Eastern District,
Division Four.

Jan. 17, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 17, 1984.

Donald S. Hilleáry, Clayton, for defendants-appellants.

Husch, Eppenberger, Donohue, Elson & Cornfeld by Mark G. Arnold and Thomas M. Carney, St. Louis, for plaintiffs-respondents.

SATZ, Judge.

In this cause, plaintiffs, the executors of the estate of William E. Chapman, deceased, sued defendants, James E. Dunnegan and John Vickroy, Chapman's former partners in a partnership doing business as Arrow Realty Company. Plaintiffs sued defendants in two counts. In Count I, plaintiffs sought a declaration of the rights of the partners under the partnership agreement, specifically requesting that, in determining the value of Chapman's interest in the partnership, partnership real estate be valued at fair market value. In Count II, plaintiffs requested the court to order an accounting and to order payment of Chapman's interest to plaintiffs.

Defendants filed a Motion to Dismiss both counts of plaintiffs' petition for failure to state a claim. This motion was denied. Plaintiffs filed Motions for Summary Judgments on both counts of its petition. The court denied Summary Judgment on Count II but granted it on Count I, ordering, as to Count I, that "the partnership real estate ... be valued at fair market value." An advisory jury then determined the fair market value of the real estate to be $250,000. Apparently, based upon this figure and the partnership "Balance Sheet,"[1] plaintiffs moved the court to enter judgment in their favor on Count II in the amount of $62,061.85. Then, by stipulation of the parties, judgment in that amount was entered. Defendants, however, "reserved" all rights for appeal. On appeal, defendants contest the denial of their Motion to Dismiss and the grant of plaintiffs' Motion for Summary Judgment. We affirm the judgment of the trial court.

The partnership agreement which created the present controversy permits the surviving partners to continue the partnership, but, if the surviving partners choose to continue the partnership, they must purchase the interest of the deceased partner by paying the value of that interest to the deceased partner's legal representatives.[2] The agreement also provides that, in determining the value of the deceased partner's interest, partnership real estate is to be valued at the value set by the partners annually. To this end, the partners were to agree in writing as to the value of the real

---

1. This financial statement was verified by defendants.

2. The partnership agreement provides:
   "Upon the close of the fiscal year in which such death occurs the remaining partners shall have the right to continue the business of the partnership by theirselves ... but they shall purchase the interest of the deceased partner and shall pay to the legal representatives of the deceased partner the value of his interest in the partnership as hereinafter set out."

estate at the end of each fiscal year. If the partners failed to agree upon the value of the real estate in any one fiscal year, the real estate was to be valued at the value agreed upon in the last previous fiscal year.[3] The partners, however, never, at any time, reached an agreed to value of the real estate, and the partnership agreement had no provision covering this failure to agree. Under this circumstance, plaintiffs concluded the proper method for evaluating the real estate should be "fair market value." Defendants concluded "book value" should be used. Plaintiffs sought judicial approval and enforcement of their conclusion by filing their two Count petition.

On appeal, as at trial, defendants' first argument appears to be that plaintiffs failed to state a claim upon which relief can be granted. As we understand this argument, defendants contend that plaintiffs' action is nothing more than an action for breach of contract. According to defendants, the contract is the partnership agreement, which defines the correlative rights and duties of the partners, and the alleged breach of this contract apparently would be defendants' failure to pay plaintiffs for Chapman's interest in the partnership. Having defined plaintiffs' cause of action as a breach of contract, defendants then argue that plaintiffs failed to plead this cause of action properly because plaintiffs failed to allege that Chapman had met all conditions precedent to defendants' duty to pay. Defendants' argument is misdirected and, thus, misses the mark.

Giving defendants' argument its most sensible meaning, the argument raises the threshold issue of whether plaintiffs were required to plead their action in contract to obtain the relief they wanted, or, stated otherwise, whether plaintiffs' two Count petition, seeking a declaratory judgment and an accounting, was an appropriate pro-cedural vehicle to obtain the relief plaintiffs wanted. Resolution of this issue requires, in the first instance, an understanding of the historical interrelation of an action on contract, at law, and an action for accounting, in equity.

■ The action for an accounting originated in equity before the advent of the action of assumpsit at law. Dobbs, *Remedies*, § 4.3 at 252 (1973). Equity courts were uniquely suited to handle an accounting: masters who were regular officers of the court were available to work through complicated accounts, and special powers of discovery then available in equity facilitated the discovery of hidden assets. *Id.* at 252; *See*, Pomeroy, *Equity Jurisprudence*, § 1421–1422 (1941). After the advent of the action of assumpsit at law, "with its recognition and enforcement of ordinary contract claims," many money claims became actionable at law, even those which involved disputed amounts. *Dobbs, supra* at 252. Consequently, in accord with the basic rule that a remedy in equity is only available where a remedy at law is inadequate, accounting in equity became appropriate only where equity could give relief not available at law. "This furnished one ground for equity jurisdiction, namely that the legal remedy was inadequate because of the complexity of the accounts." *Id.* at 252.

However:

"Equity might also intervene to compel an accounting where there was a pre-existing equitable duty to account. The duties of trustees and other fiduciaries were originally recognized and imposed only by equity courts, for example, and one of these equitable duties was to stand ready to account to the beneficiary. Naturally, equity courts were the only courts to enforce this duty to account at a time when they were the only courts to

---

**3.** The partnership agreement provides:

"Real estate, and the improvements thereon, shall be valued at the value set for such real estate and improvements by the partners annally [sic], and to this end the partners shall, at the end of each fiscal year, agree in writing as to the value of such real estate and im-provements. In the event that the partners shall not in any one year agree upon the value in writing, the value for the last previous year upon which a value was agreed upon shall be the value used for the purposes of this article."

recognize it at all. In such cases, the complexity of the account was not the basis of equity action; the basis was instead the substantive equity rule, not enforced elsewhere." *Id.* at 252–253.

Thus, there can be no sensible dispute that an equitable accounting is an appropriate remedy where there is a duty to account arising from a fiduciary relationship between parties.

▇▇▇▇ Admittedly, a partnership is, at times, referred to as a creature of contract, 59 Am.Jur. Partnership, § 6 (1971). However, once a partnership is created, the partners owe a fiduciary duty to one another, *e.g., Thomas v. Milfelt*, 222 S.W.2d 359, 363 (Mo.App.1949), regardless of the legal jargon used to describe the method of creating the partnership. 59 Am.Jur.2d Partnership, §§ 1–7 (1971). Moreover, surviving partners are considered to be and are treated as trustees of the legal representatives of the deceased partner. *See Roberts v. Hendrickson*, 75 Mo.App. 484, 491 (1898); 60 Am.Jur.2d Partnership, § 257 (1971). "Consequently it is the duty of the surviving partners to render an account of the performance of their trust to the personal representatives of the deceased partner ...." 60 Am.Jur.2d Partnership, § 257 (1971). Thus, an accounting in equity is almost the exclusive procedure for settling the affairs between the legal representatives of a deceased partner and the surviving partner. *Alexander v. Glasgow*, 365 Mo. 24, 275 S.W.2d 339, 341–342 (1955); *Kolb v. Dietz*, 454 S.W.2d 632, 636 (Mo. App.1970).[4] The propriety of this procedure is expressly recognized in Missouri by our legislature's adoption of the Uniform Partnership Act, which provides that if a partnership is dissolved by the death of a partner and the surviving partners choose to continue the partnership, the representatives of the deceased partner have a right to bring an action for an accounting and recover the value of the deceased partner's interest in the partnership. §§ 358.420 RSMo 1978. *Smith v. Kennebeck*, 502 S.W.2d 290, 293–294 (Mo.1973); *Schoeller v. Schoeller*, 465 S.W.2d 648, 655 (Mo.App. 1971). Thus, there is no question that plaintiffs chose the proper cause of action to obtain the relief they wanted.

▇▇▇▇ Moreover, defendants have cited no case nor advanced any argument which makes a deceased partner's fulfillment of his partnership obligations a condition precedent to his legal representative's right to an accounting;[5] nor have we found a case which directly addresses this issue. Plaintiffs, however, have cited cases which resolve this issue by implication. In each of these cases, an accounting was granted even though the partner seeking relief had not fulfilled all of his obligations under the partnership agreement. *See, Lanpher v. Warshauer*, 28 Cal.App. 457, 152 P. 933, 934 (1915) (plaintiff abandoned construction on partnership house before completion) and *Bowen v. Velliquette*, 153 Cal.App.2d 847, 315 P.2d 95, 97 (1957); see also, *Thompson v. McCormick*, 149 Colo. 465, 370 P.2d 442, 446 (1962).

▇▇▇▇ Perhaps, the reason this issue has not been raised and addressed directly is because of the presupposition that a partner's right to an accounting is not a conditional right. This presupposition derives from the very nature of partnership. While partnership may have contractual aspects, a dissolution of the partnership requires the ascertainment and distribution

---

4. Equitable jurisdiction is properly exercised "[w]here a fiduciary relation exists between the parties, and a duty rests upon the defendant to render an account.... The equitable jurisdiction is also practically exclusive in proceedings for an account and settlement of partnership affairs, including suits for an accounting and settlement of the firm affairs between the copartners themselves; suits for a settlement of the firm affairs between the survivors and the executors or administrators of the deceased, when a partner has died; and suits to settle the affairs of an insolvent firm, and to adjust the demands of the firm creditors and the creditors of the individual partners. The equitable jurisdiction over partnerships is a necessary outgrowth of the jurisdiction over accounting, ..." *Pomeroy, supra* § 1421, pp. 1078–1079.

5. The cases cited by defendants are actions at law, on contract and hence irrelevant to the issue here.

of the ownership interest in the partnership business. That ownership interest is derived from the formation of the partnership and is not dependent upon a partner's performance of duties and obligations under the agreement.[6] Furthermore, plaintiffs' unconditional right to an accounting here is reflected in the mandatory language of the Uniform Partnership Act, § 358.420 RSMo 1978;[7] *See, Smith v. Kennebeck, supra* at 294; *Schoeller v. Schoeller, supra* at 655 and is also reflected in the mandatory language of the partnership agreement in issue.[8] Defendants' first point is not persuasive.

Defendants also contest the trial court's entry of summary judgment. Defendants' arguments are neither clear nor explicit. Apparently, defendants argue that summary judgment is inappropriate here because (1) genuine issues of material facts still exist and, alternatively, (2) even if the facts before the trial court were undisputed, these facts would be insufficient to support the court's judgment that partnership real estate should be valued at fair market value. Neither argument of defendants has merit.

■ Defendants' argument that genuine issues of material facts exist is not demonstrated by defendants' brief nor, from our reading, supported by the record. Before the trial court, defendants did set out certain facts culled from the deposition of Fred Eppenberger, one of the plaintiff executors, who, apparently, drafted the partnership agreement in issue. Defendants, however, do not show how these facts are relevant and material to the issues raised. Defendants also speculate about other possible facts which may exist and which may be relevant and material.[9] Defendants' speculations do not create issues of fact. To state the obvious, "[m]erely saying material facts are in dispute does not mean they are." *66 Terminal Inc. v. Roberts*, 448 S.W.2d 938, 939 (Mo.App.1969). In short, defendants have failed to set forth specific facts showing there is a genuine issue for trial, and, therefore, have failed to establish the first ground of their alternative complaint. *See, e.g., Cherry v. City of Hayti Heights*, 563 S.W.2d 72, 75 (Mo. banc 1978); Rule 74.04(e).

Likewise, defendants fail to support the other ground of their alternative complaint. Contrary to this complaint of defendants,

**6.** "Of course," as pointed out by plaintiffs, "to the extent that a partner's failure to perform adversely affects the partnership," specific equitable defenses under the generic rubric "unclean hands" may be available to the surviving partners. Alternatively, surviving partners might well have an action against the estate of a deceased partner for breach of his fiduciary duty to the partnership. In the instant case, no such actions or defenses were pleaded.

**7.** Section 358.420 RSMo 1978, provides in pertinent part:

"When any partner retires or dies, and the business is continued ... without any settlement of accounts as between him or his estate and the person or partnership continuing the business, unless otherwise agreed, he or his legal representative as against such persons or partnership may have the value of his interest at the date of dissolution ascertained, and *shall receive* as an ordinary creditor an amount equal to the value of his interest in the dissolved partnership ...." (Emphasis Added)

**8.** As noted in fn. 2, *supra*, the partnership agreement provides that when a partner dies the

surviving partners "shall pay" the value of the deceased's interest in the partnership to his widow or legal representative.

**9.** For example, in their brief, defendants speculate:

"QUERY: Was the failure to agree in writing on the value of the real estate as provided in ... the Partnership Agreement, the result of any failure on the part of plaintiffs' decedent to perform his obligations under the Partnership Agreement to meet, cooperate, and agree in writing to a value on the real estate? ....

It is possible that the decedent refused to cooperate, in which case this would result in a willful breach of both his implied obligation mentioned above, and his specific covenant set out in Article VI, ¶ 1. This willful conduct may have been the very reason why there was never any writing of the fair market value.
....

Still another possibility is that the parties agreed (not in writing) that they would take book value at the time of death. This, of course, could be more or less than fair market value, depending upon the value on the day of death."

there were sufficient and undisputed facts before the court to support its judgment. The partners did adopt a method of valuing the partnership real estate—an annual written agreement by the partners. If the partners failed to agree in any one year, the previous year's agreement would control. The partners never, at any time, agreed in writing upon the value of real estate, and the agreement is silent about the proper method of valuation when the agreed upon method failed. The only question then is the legal effect of the partner's failure to act.

■ This issue is ripe for summary judgment. From the record, it is apparent the trial court had before it all the evidence that could be produced at trial. The only witnesses to such matters as the partner's intent or course of dealing are the partners themselves and their attorney. Chapman, the deceased partner, of course, cannot testify; and, as agreed to by defendants in their brief, the Dead Man's Statute, § 491.-010 RSMo 1978, makes the two individual defendants incompetent to testify about their dealings with Chapman. Also, the trial court had before it the deposition testimony of the partners' attorney, Fred A. Eppenberger. Defendants have not shown they have countervailing evidence nor have they shown any would be available for trial. They are not "entitled to a denial of [plaintiffs'] motion for summary judgment on the basis of a hope that such evidence will develop at trial." 6 J. Moore, *Moore's Federal Practice*, § 56.15[3] at 56-481 (2d ed. 1983) and cases cited therein.

■ More important, the undisputed facts before the court supported the summary judgment. The partners' failure to comply with the expressed method for valuing partnership real estate was, in effect, an abandonment of that method and left the partnership agreement without a provision for valuing partnership real estate. In the absence of a provision in the partnership agreement, the relevant provisions of the Uniform Partnership Act, Sec. 358.010 et seq., if not controlling, are persuasive. *See* 60 Am.Jur.2d Partnership, § 255, p.

160 (1972). Section 358.420 RSMo 1978 of the Act, provides that the legal representatives of a deceased partner shall receive "an amount equal to the value of his interest in the dissolved partnership" at the time of dissolution. Neither the parties nor our research have disclosed any Missouri court confronted with the meaning of "value" in the present context. However, courts in other jurisdictions have considered the issue, and, because the Act is uniform, these interpretations are unusually persuasive. *See Schoeller v. Schoeller*, *supra* at 654–55. The prevailing view among these courts is that, upon the dissolution of a partnership by death, fair market value must be used to evaluate the deceased partner's interest if the partnership agreement does not specify the method of valuing partnership assets or the method provided was not complied with. *E.g., Anderson v. Wadena Silo Co.*, 310 Minn. 288, 246 N.W.2d 45, 46–48 (1976); *Curtis v. Campbell*, 336 S.W.2d 355, 359–361 (Ky.App.1960).

■ The rationale for this view is not difficult to understand. As suggested by plaintiffs, whose argument we use without quotes, a fair market value represents the real value of the partnership holdings—the value that the partners would receive if they sold the business. At common law, when a partner died or retired, surviving partners were required to liquidate the business and distribute the proceeds. *See,* 60 Am.Jur.2d Partnership, § 198–99. The Uniform Partnership Act permits the surviving partners to continue the business, but requires them to pay to the decedent's legal representatives the value of the decedent's interest. The effect of this provision is to relieve the surviving partners of the disruption and loss attendant on a forced sale, while preserving the rights of the decedent's estate to his fair share of the partnership. Measuring "the value of his interest" at its actual fair market value, when no other method is expressed, is the only sensible method to preserve the es-

tate's right to the decedent's fair share. *See Curtis v. Campbell, supra* at 359.[11] Defendants have presented no facts nor advanced any argument requiring the valuation to be otherwise.[12]

██ On appeal, plaintiffs filed a Motion for Damages for Frivolous Appeal. Rule 84.19. The Motion was taken under submission with this case. "A 'frivolous appeal' is one which presents no justiciable question and is so readily recognizable as devoid of merit on the face of the record that there is little prospect for success." *Means v. Sears, Roebuck & Co.,* 550 S.W.2d 780, 789 (Mo. banc 1977); *State ex rel. State Hwy. Com'n v. Sheets,* 483 S.W.2d 783, 785 (Mo.App.1972). This remedy is drastic and unusual and should be reserved for those rare and unusual situations where an appeal on its face is totally devoid of merit. *Means v. Sears, Roebuck & Co., supra* at 789. Although plaintiffs have prevailed, we cannot say defendants' appeal was totally devoid of merit." We, therefore, deny plaintiffs' Motion.

Judgment affirmed.

SMITH, P.J., and PUDLOWSKI, J., concur.

11. In the *Curtis* case, *supra,* the court listed the various principles used to interpret a partnership agreement which has no clear or explicit method for valuing the value of the deceased partner's partnership interest:

> "If there is an ambiguity in the agreement, it should be construed in favor of the estate of the deceased partner ... It will also be construed against the party who performed the instrument, who in this case was one of the surviving partners ... In a controversy between a deceased partner's estate and the surviving partner concerning the valuation of the deceased partner's interest, if the partnership agreement is susceptible of two constructions, the court will not adopt the oppressive one ... Clearly this settlement provision must be construed to accomplish a just result." *Id.* at 359–360.

Applying each of these principles separately could well lead to different and opposite interpretations. The purpose of applying the principles combined is, simply put, to reach a sensible interpretation, not inconsistent with the provi-

sions of the agreement and equitable to all partners.

12. Before the trial court, defendants apparently argued the proper measure of Chapman's interest should be "book value." Defendants' apparent abandonment of this argument on appeal is understandable. Book value is to be used only when the partnership agreement explicitly so provides, *Mahan v. Mahan,* 107 Ariz. 517, 489 P.2d 1197, 1201 (1971) and, even then, book value will not be used when the facts make it inequitable to do so. *Id.* at 1201.

> "[T]he reason for this [judicial] hostility [to book value] is simply the well-recognized fact that book value does not reflect the true value of a partner's interest. Thus, it would be inequitable to require a partner to sell his interest in a partnership for a price which does not reflect its true value unless it is clear that the partner explicitly agreed to do so." *Anderson v. Wadena Silo Co., supra* at 48; *Accord, Curtis v. Campbell, supra* at 359; *Mahan v. Mahan, supra* at 1201.