OPINION
This timely appeal arises out of a November 29, 1999, judgment entry rendered in the Mahoning County Court of Common Pleas which remanded a magistrate's decision for the purpose of establishing the fair value of Appellant's interest in a limited partnership. On July 28, 2000, this Court determined that the judgment entry to remand the matter was a final appealable order. The issue on appeal is whether the trial court was required to use a valuation method based solely upon the raw assets of the partnership, or whether the court could order further factfinding based on a different valuation method. For the following reasons, we affirm the decision of the trial court.
John Conti ("Appellant") is a limited partner in Crestwood Center Co., a real estate partnership which has as its primary asset a commercial office building in Austintown Township, Ohio. (6/28/99 Tr., Def. Exh. A., p. 4). The building had 18 tenants, and generated approximately $95,000 in pre-tax rental income for the partnership in 1997. (Id.,
Appendix B, Schedule II). The building was appraised in 1996 at $1.7 million. It had approximately $300,000 in mortgage debt at the time Appellant filed the instant complaint. (Id., Pl. Exh. A). The partnership consisted of two general partners, Appellees Alex Christoff and George Guerrieri, and two limited partners, Appellee James Conti and Appellant. Each partner holds a 25% interest in the partnership.
On May 16, 1997, Appellant sent a letter to Appellee Guerrieri requesting to withdraw from the limited partnership, pursuant to R.C. § 1782.33.
On December 5, 1997, Appellant filed a complaint in the Mahoning County Court of Common Pleas in order to obtain the cash value of his 25% share upon withdrawal from the partnership. The three remaining partners were named as defendants. The partnership itself was not made a party to the action. The trial court referred the case to a magistrate.
A September 25, 1998, Magistrate's Decision determined that Appellant was entitled to withdraw from the partnership pursuant to R.C. §1782.33(A), that he was entitled to 25% of the net partnership assets and that he was entitled to receive his interest in cash. The decision ordered the parties to submit evidence as to the valuation of the assets. This decision was adopted by the trial court on March 12, 1999. On April 6, 1999, Appellees filed a notice of appeal of the March 12, 1999, Judgment Entry which was designated as Appeal No. 99 CA 84.
On June 23, 1999, this Court filed a Journal Entry which remanded the case to the trial court for the purpose of conducting a hearing on damages. We held the appeal in abeyance until after such hearing.
The hearing on damages was held on June 28, 1999. Appellees presented valuation evidence based on the fair market value of a 25% interest in the partnership. Appellees presented expert evidence which used three methods of valuation. These discounted the final value due to lack of marketability of Appellant's interest and due to Appellant's minority interest in the partnership. (6/28/99 Tr. pp 43-44). Appellant presented evidence of the 1996 appraised value of the real estate, deducted the amount of the mortgage still due and divided the resulting amount by four to come up with his withdrawal share. (6/28/99 Tr. p. 22).
The July 1, 1999 Magistrate's Decision used Appellant's method of valuation and determined that: 1) the real estate plus cash-on-hand was valued at $1.718 million; 2) the liabilities of the partnership (including the mortgage) were $312,146.56; and 3) the resulting net assets totaled $1.405 million. The magistrate awarded Appellant 25% of this amount for a total of $351,492.58. The magistrate granted judgment against all three Appellees and awarded interest at 10% per annum beginning November 16, 1997.
On July 12, 1999, Appellees Christoff and Guerrieri filed Objections to the July 1, 1999, Magistrate's Decision. Appellees argued that the magistrate did not properly value Appellant's interest in the partnership and that the fair market value of the partnership as an ongoing entity should have been the valuation standard, as opposed to the value of the raw assets. Appellees also objected to the decision to grant judgment against the individual partners rather than against the partnership itself.
In a November 29, 1999, judgment entry the trial court referred the case back to the magistrate for further hearing to determine the fair value of Appellant's interest in the partnership. The court found that the magistrate's calculation was too high. The court ordered the magistrate to use the definition of fair cash value found in R.C. §1782.437 as the definition for determining the fair value of Appellant's interest in the partnership.
On December 21, 1999, the trial court filed an Amended Judgment Entry which added the words, "[t]here is no just reason for delay" to the November 29, 1999, order.
Appellant then filed a timely appeal of the November 29, 1999, decision (as amended on December 21, 1999). This was designated as Appeal No. 99 CA 327.
On February 1, 2000, Appellees filed a Motion to Dismiss both appeals for lack of a final appealable order as defined by R.C. § 2505.02. This Court overruled the motion on July 28, 2000, and the case is now before us on the merits.
Appellant's sole assignment of error asserts:
 "The court erred by refusing to adopt the Magistrate's determination that Appellant John Conti is entitled to judgment against the Defendants Alex Christoff, George Guerrieri and James Conti in the sum of $351,492.58 with interest at 10% per annum since November 16, 1997."
 A. Fair Value
Appellant argues that, under R.C. § 1782.34, he is entitled to the fair value of his partnership interest. R.C. § 1782.34 states:
 "Except as provided in this chapter, upon withdrawal, any withdrawing partner is entitled to receive any distribution to which he is entitled under the partnership agreement and, if not otherwise provided in the agreement, is entitled to receive, within a reasonable time after withdrawal, the fair value of his interest in the limited partnership as of the date of withdrawal based upon his right to share in distributions from the limited partnership."
The parties' partnership agreement contains no provisions for the withdrawal of a limited partner. R.C. § 1782.34 therefore allows Appellant to receive the "fair value" of his interest in the limited partnership. Appellant argues that the magistrate was not bound by any particular definition of "fair value" because the term is not defined in the section of the Revised Code which relates to limited partnerships. Appellant argues that the magistrate considered all the relevant assets and liabilities of the partnership and calculated a fair value.
Appellant also argues that the trial court, in reviewing the magistrate's decision, was not permitted to use the definition of "fair cash value" in R.C. § 1782.437. Appellant argues that R.C. §1782.437 refers only to a dissenting partner's rights after a merger or consolidation of a partnership, and not to the rights of a partner withdrawing from a limited partnership. Appellant does not explain why a magistrate must use asset value as its definition of "fair value," while the trial court would not be permitted to use fair cash value as defined in R.C. § 1782.437 for its definition of "fair value," except to say that the magistrate's decision was fair and the trial court's decision was not. Based on the record before us, we do not find Appellant's argument persuasive.
A trial court reviews the decisions of a magistrate pursuant to Civ.R. 53. Civ.R. 53(E)(4)(b) states:
 "(b) Disposition of objections. The court shall rule on any objections. The court may adopt, reject, or modify the magistrate's decision, hear additional evidence, recommit the matter to the magistrate with instructions, or hear the matter. The court may refuse to consider additional evidence proffered upon objections unless the objecting party demonstrates that with reasonable diligence the party could not have produced that evidence for the magistrate's consideration.
A trial court's decision to adopt, reject or modify a magistrate's report and recommendation, or to hold further hearings, will be reversed on appeal only for an abuse of discretion. Wade v. Wade (1996),113 Ohio App.3d 414, 419. An abuse of discretion, "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
The issue before both the magistrate and the trial court was that of valuation of an interest in a limited partnership. Valuation is typically a factual issue left to the discretion of the trier of fact. Hacker v.Hacker (1981), 5 Ohio App.3d 46, 47. "The common pleas court is not required to adopt the valuation of any witness, but is instead vested with wide discretion to determine the weight of the evidence and the credibility of witnesses." Murray v. Marina, Inc. v. Erie Cty. Bd. OfRevision (1997), 123 Ohio App.3d 166, 172. The trier of fact is not bound by the appraisal or valuation methodology used by any expert witness.Id. at 172; Youngstown Sheet Tube Co. v. Mahoning County Bd. OfRevision (1981), 66 Ohio St.2d 398, 402. Although the trial court is granted great leeway in obtaining a value for property, its valuation must be based on evidence which is before the court. McCoy v. McCoy
(1993), 91 Ohio St.3d 570, 578.
R.C. § 1782.34 does not effectively limit the discretion of the trial court in determining the value of a withdrawing partner's interest in a limited partnership. The statute only requires the trial court to determine the "fair value" of the partner's interest in the limited partnership. "Fair value" is not defined in that portion of the statute dealing with withdrawal from a limited partnership.
Appellant's argument that the trial court was not permitted to look to other sections of the partnership statute for guidance in defining "fair value" is mistaken. R.C. § 1.49 states that:
 "If a statute is ambiguous, the court, in determining the intent of the legislature, may consider among other matters:
"* * *
 "(D) The common law or former statutory provision, including laws upon the same or similar subjects."
Furthermore, undefined words in a statute are to be interpreted by their usual, normal or customary meanings. State ex rel. Bowman v.Columbiana Cty. Bd. Of Commrs. (1997), 77 Ohio St.3d 398, 400; R.C. § 1.42.
The trial court, in its discretion, chose to rely on R.C. §1782.437 in defining how to arrive at a fair value of Appellant's partnership interest. R.C. § 1782.437(B) states, in pertinent part:
 "* * * The fair cash value of an interest for purposes of this section is the amount that a willing seller who is under no compulsion to sell would be willing to accept and that a willing buyer who is under no compulsion to purchase would be willing to pay, but the fair cash value paid to any partner shall not exceed the amount specified in the demand of that partner."
R.C. § 1782.437 deals with a dissenting partner's right to withdraw from a domestic limited partnership after a merger or consolidation. If the dissenting partner has voted against the merger or consolidation, that partner is entitled to sell back its interest in the partnership for fair cash value. R.C. § 1782.436(B), (C). A dissenting partner in the surviving partnership may only seek relief for part of its partnership interests. R.C. § 1782.435(A)(2). A dissenting partner in the partnership that is being merged or consolidated may seek relief for its entire partnership interest. R.C. § 1782.435(A)(1).
A dissenting partner must notify the partnership in writing of its intent to assert its right to receive "fair cash value" as a dissenting partner. R.C. § 1782.436(B), (C). Fair cash value is determined a number of ways: 1) by the terms of the partnership agreement; 2) by a separate agreement between the dissenting partner and partnership; or 3) by the terms of the statute if there has been no prior agreement. R.C. § 1782.436(F). The statute also allows the court to appoint appraisers and to take other evidence of fair cash value. R.C. §1782.437(A).
The relief afforded a dissenting partner is in many respects similar to the provisions allowing for a limited partner to withdraw from a partnership found in R.C. § 1782.33, et seq. In both instances the partnership is buying back the partner's interest in the partnership. In both instances the terms of the buy-back are governed either by prior agreement of the partners, or, failing that, by statute. Both dissenting and withdrawing partners must give notice to the partnership of its intent to disassociate from the partnership. Finally, in both instances the partnership must give the disassociating partner fair value for its interest in the partnership, although a dissenting partner is limited to receiving fair cash value, whereas a withdrawing partner may receive assets "in kind" as well as cash. R.C. § 1782.35.
Because of the similarities of the two statutory schemes, it does not appear that the trial court abused its discretion by using the definition of "fair cash value" found in R.C. § 1782.437 as the definition of "fair value" found in R.C. § 1782.34. Appellant certainly sought to receive the cash value of his interest in the partnership throughout the lower court proceedings, and the trial court appropriately found a definition of fair cash value to use in determining Appellant's damages.
In further support of the trial court decision, Appellees argue that R.C. § 1782.34 requires a valuation of a withdrawing partner's interest in the limited partnership itself, explaining that a partnership is an ongoing business entity not merely defined by its underlying assets. Appellees contend that a partner's interest is defined in R.C. § 1782.01(L) as:
 "`Partnership interest' means a partner's share of the profits and losses of a limited partnership and the right to receive distributions of partnership assets."
Appellees argue that a partnership interest must necessarily be valued as part of an ongoing operation, taking into account profits and losses and considering what a willing buyer would pay for an interest in the ongoing operation of the partnership. Appellees maintain that such an approach must be used regardless of whether the calculation yields an amount lower than the value of the underlying assets.
Appellees cite to a number of cases from out-of-state jurisdictions to support their claim. In Shopf v. Marina Del Ray Partnership (La. 1989),549 So.2d 833, 837, the non-withdrawing partners in a real estate partnership attempted to use the book value of the partnership, which was a negative value because its liabilities exceeded its assets, as the fair value. The Louisiana Supreme Court held that the book value was one of many factors to be used in valuing the fair market value of the partnership, and the court allowed a one-third minority share discount after taking into account a variety of other factors, Id. at 833, 840.
It should be noted that book value did not enter into either the magistrate's decision or the trial court's opinion in the case at bar. The book value of the partnership, as reported by Appellees' expert, was $299,604 as of December 31, 1997, a figure far below the magistrate's valuation. (6/28/99 Tr., Def. Exh. A, Schedule I).
Appellees also cite Estate of Watts v. Commissioners (C.A. 11, 1987),823 F.2d 483, which involved the valuation of a real estate partnership interest for estate tax purposes. The real estate owned by the partnership had a low book value, but was worth more in liquidation because it had very valuable timber on it which was not calculated into the book value. The court held that valuation should have been based on the ongoing concern value and not on liquidation value. Id. at 487. The ongoing concern value was lower than liquidation value because it was only based on profits, taking into account, "the cash value of the underlying assets of the company." Id. at 488. The court also allowed a discount for lack of marketability of the partnership interest. Id.
Appellees also refer to Chapmen v. Dunnegan (Mo.App. 1984),665 S.W.2d 643, which involved a dispute over whether a decedent's interest in a partnership should be valued at book value or fair market value. The court held that, barring any other controlling language in the partnership agreement, valuation should be based on fair market value, meaning, "the real value of the partnership holdings — the value that the partner would receive if they sold the business." Id. at 649.
Appellees correctly assert that the market value of a partnership is not merely the difference between its assets and liabilities. Generally, a partnership which operates as an ongoing concern is more valuable than its raw assets primarily because of the added factor of goodwill. Goodwill is the benefit a business acquires due to general public patronage and encouragement; constant or habitual customers; or from other circumstances, often accidental, including reputation for skill, punctuality, public notoriety, or even from ancient partialities or prejudices. Kahn v. Kahn (1987), 42 Ohio App.3d 61, 63. Appellees have also cited at least one situation in which the ongoing concern value of a partnership could be less than the value of its combined assets and liabilities. Estate of Watts v. Commissioners, supra.
Appellees also correctly state that the market value of an interest in a partnership is not necessarily found by merely subtracting the partnership's liabilities from its assets and multiplying that amount by the partner's fractional interest. 2 Bromberg Ribstein on Partnership (1994), 7:121, Section 7.13(b). The market value of a minority share in a company may be discounted because a minority shareholder often cannot control decisions which would affect the future earnings of the company. In addition, valuation is often reduced because of the lack of marketability of the shares of a company whose shares are not traded on a public exchange. See Balsimides v. Protameen Chems., Inc. (1999),160 N.J. 352, 373, 734 A.2d 721; Priebe v. Priebe (S.D. 1996),556 N.W.2d 78, 82.
The trial court remanded the case back to the magistrate to determine the fair value of Appellant's interest in the partnership in the light of the aforementioned definition of fair cash value found in R.C. §1782.437. The trial court was concerned that the magistrate relied on an appraisal which did not fully account for the costs involved in a sale of the partnership property, which costs would reduce the final net appraisal of the fair cash value of the property. (11/29/99 J.E.). Once again, this was a discretionary choice made by the trial court.
The trial court in the instant case was not being unreasonable or arbitrary in requiring that the magistrate take into account the fees and costs of a hypothetical sale of the property. The trial court reasoned that, if the remaining partners did need to sell the real estate, Appellant would be the only partner not sharing in the costs of the sale. It is not unreasonable to conclude that Appellees might have to sell the real estate, given that the partnership had no other significant assets with which to pay any judgment resulting from this action. Furthermore, if Appellant had been awarded 25% of the real estate in kind and later attempted to reduce his award to cash by initiating a partition action, he would also share in the costs of partitioning the property.
All the parties argued very persuasively that there were different methods the trial court could have used to value Appellant's 25% percent interest in the partnership. It is clear from R.C. § 1782.01(L) that "partnership interest" is not synonymous with "partnership assets." The cases cited by Appellees, though, all seem to agree that the partnership assets form a starting point or a baseline in the valuation process. Assets are incorporated into valuation in a variety of ways: as "book value"; as book value adjusted for appreciation; as the going concern value including adjustments for goodwill; or as part of any other form of fair market valuation. A partnership interest, like shares of stock in a corporation, represent the company's value. The aggregate value of all the shares or partnership interests does not necessarily equate with the value of the underlying assets, and vice versa. Salem Med. Arts Dev.Corp. v. Columbiana Cty. Bod. Of Revision (1998), 82 Ohio St.3d 193,195.
The authorities cited by Appellees do not preclude a court from discounting fair value because of minority interest or lack of marketability, but such discounts are not mandated either. 2 Bromberg 
Ribstein on Partnership (2001 Supp.), 7:188, Section 7.13(b)(1). The valuation of a withdrawing partner's share in a partnership which is not traded on an active market should be based on the capital and income accounts of the partnership, taking into account asset appreciation or depreciation, goodwill, and any other relevant factors including possible minority discounts and marketability discounts. Id. at 188-189, Section7.13(b)(1).
Civ.R. 53(E)(4)(b) grants the trial court wide discretion in how it responds to a magistrate's report after a hearing on objections to the report. The trial court was able to review the full transcript of the magistrate's hearing. The trial court used its discretion to reject the reasoning of the magistrate. The trial court apparently did not find competent evidence in the record to support its own formula for valuation. Thus, the trial court returned the case to the magistrate with instructions to conduct further factfinding, as specifically allowed by Civ.R. 53(E)(4)(b). Because R.C. § 1782.34 does not significantly limit the discretion of the trial court in choosing a method for ascertaining "fair value," there is no abuse of discretion in the trial court's choice of one among many valuation methods. The trial court's decision to conduct further factfinding which conforms with that method is therefore a permissible option under Civ.R. 53(E)(4)(b).
 B. Judgment Rendered Against Improper Parties
Appellant argues that the trial court should not have sustained Appellees' objection that any judgment should be assessed against the partnership and not against the individual partners. Appellant argues that the partnership is not a party to this action and that a judgment cannot be made against a non-party. Appellant speculates that the partnership would not be able to pay a judgment because the only significant asset of the partnership is one parcel of real estate, rather than cash or liquid assets.
Appellees have no response to Appellant's argument other than to assert that the trial court was correct and that R.C. § 1782.34 does not specify which party or entity must pay the fair value of a withdrawing partner's interest.
The Crestwood Center Co. partnership was not formally made a party to this action. A partnership is a legal entity and can be sued. R.C. §2307.24. The limited partnership statute does not clearly specify that a withdrawing partner must name the partnership as a defendant in a withdrawal action. R.C. § 1782.34 does state that a withdrawing partner may receive the fair value of his interest in the partnership, "based on his right to share in distributions from the limited partnership." The statute later states that when a partner becomes entitled to a distribution, "he has the status of, and is entitled to all remedies available to, a creditor of the limited partnership with respect to the distribution." R.C. § 1782.36. The limited partnership statute treats withdrawal as, in essence, a type of distribution, and the proper entity liable for that distribution is the partnership itself.
The version of R.C. § 1775.14 in effect at the time Appellant filed his complaint states, in pertinent part:
 "(A) Subject to section 1339.65 of the Revised Code and except as provided in division (B) of this section, all partners are liable as follows:
 "(1) Jointly and severally for everything chargeable to the partnership under sections 1775.12 and 1775.13
of the Revised Code. This joint and several liability is not subject to division (D) of section 2315.19 of the Revised Code with respect to a negligence claim that is otherwise subject to that section.
 "(2) Jointly for all other debts and obligations of the partnership, but any partner may enter into a separate obligation to perform a partnership contract." (Emphasis added).
The liability of a limited partner is further restricted by R.C. §1775.14(B) and R.C. § 1782.19. Appellant's claim does not fall into any of the listed categories of joint and several liability, and is therefore governed by the catch-all joint liability provision in R.C. § 1775.14(A)(2). An important aspect of joint liability in this context is that, "in order to levy upon the individual property of a partner in satisfaction of a judgment against the partnership, the creditor must first show that partnership assets have proven insufficient." Wayne Smith Constr. Co. v. Wolman, Duberstein Thompson
(1992), 65 Ohio St.3d 383, 391. If Appellant would ultimately need to first satisfy its judgment from the assets of the partnership as part of subsequent execution proceedings, it is at least arguable that the partnership is a necessary party during the initial litigation of Appellant's withdrawal from the partnership.
A court may determine that a party is necessary for the just and complete adjudication of an action and a necessary party may be forced to join the action as an indispensable party under Civ.R. 19(B). If a trial court determines that a party is indispensable to the action, that the party is subject to service of process and that the nonjoinder issue has not been waived, then the court has no discretion under Civ.R. 19(A) and (B) and the party must be joined or the case dismissed. State, ex rel.Gill v. Winters (1990), 68 Ohio App.3d 497, 503.
The trial court, in an unusual step, determined that the partnership was the proper defendant in this action without going through the procedure of joining a necessary party or allowing the existing parties to amend the complaint or to effect joinder on their own.
In reviewing the trial court's judgment, it is well established that every reasonable presumption must be made in favor of the judgment and findings of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, note 3.
We may presume that the trial court treated Appellees' objections to the July 1, 1999, Magistrate's Decision as including a Civ.R. 19 motion for joinder of a party needed for just adjudication. We may also presume that the trial court intended that the effect of the November 29, 1999, decision would be to sustain Appellees' motion to join the partnership as a necessary party. By remanding the case to the magistrate, the trial court gave Appellees an opportunity to further proceed with properly joining the partnership to the action pursuant to Civ.R. 19. Therefore, we do not find harmful error in the judgment of the trial court because, on remand, the partnership may be properly joined to the action by any of the parties, or upon further proceedings, by the trial court itself.
 CONCLUSION
For the aforementioned reasons, we overrule Appellant's assignment of error. It was not an abuse of discretion for the trial court to remand the action to the magistrate for further factfinding. We also determine that the trial court made no error in rendering judgment against the partnership while at the same time giving Appellees an opportunity to effect the joinder of the partnership to the action upon remand to the magistrate. The November 29, 1999, Judgment Entry is affirmed in full.
VUKOVICH, P.J. and READER, J., concurs.