Michael SCHREIBMAN, Appellant/Cross–
Respondent,

v.

Karen ZANETTI, Defendant,

and

Paul M. Katcher, Paul M. Katcher and
Associates, Paul Katcher and Associates,
Inc., and Katcher and Associates, Inc.,
Respondents/Cross–Appellants.

No. WD 48476.

Missouri Court of Appeals,
Western District.

July 18, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 1995.

Scott Mach, Kansas City, for appellant.

Tammy N. Etem, Kansas City, for defendant Karen Joan Zanetti.

Morris J. Nunn, Kansas City, for respondents.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SPINDEN, Presiding Judge.

Michael Schreibman, Paul Katcher and Karen Zanetti[1] organized a partnership to operate a business in 1977. The business endured until 1985 when quarrelling broke up the relationship and led to this lawsuit. In February 1985, after Katcher terminated his relationship with Schreibman, Schreibman sued Katcher, three of Katcher's corporations, and Zanetti. Schreibman accused Katcher of not paying Schreibman commissions and the value of one-quarter interest in the business. Schreibman also charged Katcher with converting business property

---

1. Karen Zanetti was married to Schreibman from November 1973 to January 1982.

and with making fraudulent misrepresentations. Schreibman accused Zanetti of breaching their 1981 separation agreement.

The jury returned verdicts for Schreibman on all the counts submitted against Katcher. The trial court entered judgment against Katcher and his corporations, but it merged all of the damage awards into the jury's award for fraud. The jury also returned a verdict for Schreibman against Zanetti.[2] Schreibman and Katcher appeal. We affirm the circuit court's judgment.

## Facts

Schreibman met Katcher in 1975 or 1976 when Schreibman asked a Chicago manufacturer, Enesco, to let him represent it as an independent representative. Because Schreibman lived in St. Louis, Enesco told him to talk to Katcher, its independent representative who lived in St. Louis.

Schreibman called Katcher and told him that his wife Zanetti was interested in working for him by selling Enesco products. Katcher hired Zanetti. Katcher later told Schreibman that Enesco was considering changing its marketing plans. He said that Enesco was pressuring him to increase his customer base and to sell directly to his distributors' customers. Schreibman suggested that Katcher persuade Enesco to use a showroom to reach new customers.

Katcher and Zanetti later went to Chicago to convince Enesco officials to try Schreibman's showroom concept. Enesco accepted the idea and agreed to work with Katcher in opening one.

Katcher asked Schreibman to work for him in setting up the showroom. Schreibman said that he would not work for anyone and that he wanted control of any business with which he was involved. Katcher later asked Schreibman again to work for him, but Schreibman refused. Katcher then suggested that they become "partners."[3] Katcher and Schreibman had several meetings to negotiate an agreement. They orally agreed to a partnership which included Zanetti.

Schreibman wanted to put their understanding in writing, but Katcher did not, and the agreement remained oral.

Schreibman, Katcher and Zanetti opened the showroom in Kansas City during January 1978. Katcher remained in St. Louis and managed affairs with Enesco. Schreibman and Zanetti moved to the Kansas City area to manage the showroom. Zanetti took care of the showroom's day-to-day operations and clerical responsibilities. Schreibman took care of road sales and hired the showroom personnel. All three shared expenses. Katcher and Schreibman put some of their partnership earnings back into the partnership account.

The business began booming in 1980 when Enesco introduced "Precious Moment" figurines to the showroom. By 1984, their annual sales reached $10 million. Prosperity brought unrest and quarrelling.

First came an end to Zanetti's and Schreibman's marriage in November 1981. Although they continued to work together, their relationship became increasingly disharmonious.

By 1983 Schreibman and Katcher were arguing. Schreibman suspected Katcher of cheating him, and Katcher was denying that he was Schreibman's partner. Although the two met on June 1, 1984, to "patch things up," their quarreling persisted. In 1985 Katcher announced the end of his relationship with Schreibman. On February 15, 1985, Katcher wrote Schreibman: "Effective February 18th, you will no longer represent Paul Katcher & Associates.... I will pay commissions for the next 60 days of 1985."

Schreibman sued Katcher and Zanetti. The jury returned verdicts for Schreibman and against Katcher in these amounts: $525,000 actual damages and $500,000 punitive damages for fraudulent misrepresentation; $48,230 actual damages and $50,000 punitive damages for conversion; $65,000 for breach of contract for money due in commissions; and $500,000 for breach of partnership. The trial court, however, concluded that the dam-

---

2. Zanetti did not appeal.

3. Katcher denies that he intended to enter a partnership and denies being Schreibman's partner.

age verdicts for breach of contract, conversion and breach of partnership merged with the damages for fraud.

Katcher appeals. He contends that the trial court erred by (1) allowing Schreibman's expert to give an opinion about the business' value; (2) admitting Schreibman's and Schreibman's wife's opinion of the value of certain aspects of the business; (3) submitting the case to the jury and refusing to grant Katcher's motions for summary judgment, directed verdict, judgment notwithstanding the verdict, or in the alternative, motion for new trial, because the issues required an accounting by a court of equity; (4) not using MAI 26.06 in instructing the jury concerning Schreibman's breach of contract claims; (5) allowing Schreibman to quote Katcher's threats concerning what he would do if Schreibman sued him; (6) denying his motions for directed verdict and judgment notwithstanding the verdict or, in the alternative, a new trial because the jury's verdict on the fraud claim and breach of partnership claim were inconsistent; (7) instructing the jury on the fraud claim; (8) not granting Katcher's motions for directed verdict, judgment notwithstanding the verdict, or, in the alternative, for new trial on Schreibman's claims of breach of contract and conversion; and (9) entering judgment against Katcher's three corporations from that judgment.

Schreibman also appeals. He complains that the trial court erred by merging damages and by concluding that he was not entitled to prejudgment interest.

### Katcher's Points on Appeal

#### Expert Testimony

Katcher argues three points of error concerning the testimony of Schreibman's expert, Steven Walter, who expressed an opinion of the value of Schreibman's share of the business. Katcher asserts: (1) the expert was not sufficiently educated and experienced to qualify for recognition as an expert; (2) Schreibman did not lay a sufficient foundation for books and other facts on which the expert relied; and (3) the expert did not consider the value for partnership assets and

good will and that the partnership was terminable-at-will.

 The trial court did not err in recognizing Walter as an expert. A witness' qualifications to render an expert opinion is a matter within the trial court's discretion. *Mehra v. Mehra*, 819 S.W.2d 351, 355 (Mo. banc 1991). "The trial judge has a broad discretion in determining whether or not a particular witness has sufficiently qualified to give an expert opinion on the subject, and in the absence of abuse of this discretion cannot be successfully charged with error." *State of Missouri ex rel. State Highway Commission v. Cone*, 338 S.W.2d 22, 27 (Mo.1960).

Walter testified that he had a master's degree in business administration, was a certified financial analyst, and was a candidate for admission to the American Society of Appraisers. He also testified that he was involved with evaluating closely-held entities at George K. Baum Investment Bankers in Kansas City. His responsibilities involved writing fairness opinions for acquisitions and mergers and valuing private entities or securities in legal matters. He testified that almost all of his practice involved evaluating the value of businesses.

 In light of this testimony, we do not discern an abuse of discretion in the trial court's recognizing him as an expert. That Walter had not previously valued a business such as the one in question was not a determining factor; it was a matter of the proper weight to be given the evidence, not an issue of its admissibility. The depth and breadth of experts' experience and knowledge are pertinent to the weight to be accorded their testimony, not to the admissibility of their opinion. *St. Louis Southwestern Railway Company v. Federal Compress and Warehouse Company*, 803 S.W.2d 40, 43 (Mo.App. 1990).

We also disagree with Katcher's complaint that the trial court erred by not requiring Schreibman to lay a sufficient foundation for Walter's opinion. Katcher contends that Schreibman did not lay a sufficient foundation for Walter's reliance on (1) books which he could not declare to be authoritative; (2) an evaluation formula which Walter could not

declare to be widely accepted by appraisers; and (3) facts prepared by Schreibman's wife.

■ Walter did refer to books, but Schreibman did not attempt to introduce them into evidence, and we do not discern any requirement that he do so. Hence, he did not need to establish a foundation for introducing the books into evidence. He needed only to satisfy the requirements of § 490.065, RSMO 1994, to establish a foundation for his expert's testimony.

■ We further disagree with Katcher's complaint that Schreibman did not lay a sufficient foundation for Walter's reliance on an evaluation formula or methodology suggested by an expert he did not know. In § 490.065.3, the General Assembly authorized the acceptance of an expert's opinion although that opinion may be based on facts or data supplied by a third party, including another expert. The statute says:

> The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

To satisfy the statute, a litigant must establish that experts within a specialized area customarily and reasonably rely on the facts or data on which the testifying expert is relying for his or her opinion and that the facts or data are reasonably reliable.

Walter said that he found the methodology he used by researching manufacturer's representative businesses at a Federal Reserve Bank library. There he found a directory of manufacturer's representatives associations. He said that the largest of the associations referred him to Melvin Daskill who had given seminars for the association concerning how to value manufacturer's representative businesses. Walter bought books written by Daskill and used them to form his opinion of the value of Schreibman's business interest.

Walter testified that he customarily relied on such sources in doing his appraisal work and that his reliance on Daskill's methodology was reasonable. He independently decided that Daskill's methodology was reasonable after testing it with a method with which Walter was quite familiar, the income stream method. "The trial judge is expected to defer to the expert's assessment of what data is reasonably reliable." *Wulfing v. Kansas City Southern Industries, Inc.,* 842 S.W.2d 133, 152 (Mo.App.1992). Schreibman laid a sufficient foundation for acceptance of Walter's reliance on Daskill's formula—though barely.

■ Walter's reliance on facts and data supplied by Schreibman's wife, Jo Schreibman, was also acceptable under § 490.065.3. Walter said he customarily and reasonably relied on the type of data she supplied him. Although he more typically obtained it from independent accounting sources, the record suggests that the data either had been lost or was never kept. Katcher, who insisted on keeping such records for the partnership, could not supply it, and someone had to reconstruct it. Jo Schreibman, an experienced bookkeeper, said that she spent 160 to 200 hours reconstructing the data. She testified at length as to how she reached her conclusions. Walter could not vouch for the data as reasonably reliable. He assumed it to be accurate without checking it, but he did not need to do so because Jo Schreibman vouched for the reasonableness and accuracy of it. Walter's inability to vouch for it was inconsequential.

The obvious effect of the jury's verdict was to make valid Walter's assumption that the data was accurate. The circuit court did not err in receiving Walter's opinion although it was based on an untested assumption that Jo Schreibman's data was accurate. Had Jo Schreibman not testified and supplied the requisite assurance for the data's reliability, the outcome would be different.

■ Katcher finally complains that Walter did not consider the value of the partnership's assets and good will and that he ignored the partnership's being terminable at will. Katcher was able to explore these issues during cross-examination and during examination of his own expert. These matters were pertinent to the weight to be given Walter's testimony, not its admissibility.

**Value of Samples, Fixtures, and Commissions**

■ Katcher complains that the trial court erred in allowing Schreibman to give an opinion about the value of the partnership's showroom samples and fixtures and his lost commissions. Katcher asserts that Schreibman lacked the requisite familiarity with the subject matter and that his opinion was based on speculation. We disagree.

■ A property owner is competent to give an opinion of the property's value if he or she "knows the property intimately and is familiar with its value." *Langdon v. Koch*, 393 S.W.2d 66, 70 (Mo.App.1965). The weight to be accorded to such an opinion is for the jury to decide, although a court should not permit a property owner to engage in "guesswork." *Id.*

The evidence established that Schreibman was familiar with the value of the products and the amounts of commissions owed to him. Although he testified that his figures were based on estimates, the estimates were "educated" and were not mere speculation. The circuit court properly allowed the jury to judge the weight to be accorded to Schreibman's opinions.

■ Katcher also asserts that the circuit court erred in allowing Schreibman's wife, Jo Schreibman, to testify about Schreibman's loss of commissions. Katcher contends that Jo Schreibman was not qualified to testify about such matters and that her calculations were based on inadequate data.

Jo Schreibman was an experienced bookkeeper. She spent 160 to 200 hours going through the partnership records. She used documents which were in evidence to make her calculations. She merely did an analysis of the numbers; she did not give an expert opinion as to the value of the partnership. She took the dollar amounts from the commission statements, applied the percentages, and made the mathematical calculations.

Katcher argues that Jo Schreibman's calculations were based upon incomplete records and that she failed to explain specifically how she separated Katcher's and Schreibman's accounts. Katcher, however, had the opportunity to cross-examine her about her calculations. Katcher's claims go to the weight to be accorded her testimony, not its admissibility. The trial court did not err in allowing the jury to hear Jo Schreibman's testimony.

**Partnership Accounting and Breach of Partnership Instruction**

■ Katcher contends that the circuit court erred in submitting this case to the jury because it should have been preceded by an accounting by a court in equity to determine what the partnership owed Schreibman after the partnership's dissolution. The existence and extent of the partnership was a hotly-contested issue. Schreibman offered to submit the case on an equitable accounting if Katcher admitted that their business was a partnership. Katcher refused to admit that it was a partnership. Katcher argues, "[I] was willing to concede that some type of joint venture or partnership relationship existed [with Schreibman] with regard to the ownership and management of the Enesco showroom. However, [I] specifically deny [the] intention to form, and thus the existence of a partnership in [the] entire Enesco business."

Katcher claims that, pursuant to the Uniform Partnership Law, § 358.010, *et seq.*, RSMo, the dissolution of a partnership triggers a statutory obligation for an accounting. He does not explain how an accounting could occur without his acknowledging even the existence of a partnership. Whether the partnership existed was a question of fact for the jury. Katcher's contention is without merit.

Katcher cites *Kielhafner v. Kielhafner*, 639 S.W.2d 288 (Mo.App.1982), for the proposition that even where the existence of a partnership is at issue, it should be tried as an accounting. That was not the holding in *Kielhafner* and was not even a contested issue. We do not find *Kielhafner* persuasive.

■ Katcher further asserts that even if the issue was properly submitted to the jury, the instruction submitted to the jury on breach of the partnership agreement was erroneous because it did not comply with MAI 26.06. We disagree.

The instruction submitted to the jury provided:

Your verdict must be for plaintiff Michael Schreibman and against defendant Katcher if you believe:

First, plaintiff Michael Schreibman and defendants Paul Katcher and Karen Zanetti, by words and conduct, entered into a partnership, and

Second, defendant Katcher failed to pay Michael Schreibman his share of the value of the partnership business after February 15, 1985, and

Third, plaintiff Schreibman was thereby damaged.

The term "partnership" as used in this instruction means an association of two or more persons to carry on as co-owners a business for profit.

The instruction was not in the Missouri Approved Instructions. Schreibman patterned it after § 358.060, RSMo, and *Kielhafner*, 639 S.W.2d at 288. Katcher asserts that the instruction should have been patterned after MAI 26.06, the breach of contract instruction, which provides:

Your verdict must be for plaintiff if you believe:

First, plaintiff and defendant entered into an agreement whereby plaintiff agreed (*set out plaintiff's agreement*) and defendant agreed (*set out defendant's agreement*), and

Second, plaintiff performed his agreement, and

Third, defendant failed to perform his agreement, and

Fourth, plaintiff was thereby damaged.

We agree with Schreibman that performance of the partnership agreement is not required for a partner to receive his share of the partnership. *See Chapman v. Dunnegan*, 665 S.W.2d 643, 647 (Mo.App.1984). Katcher's contention is without merit.

### Katcher's Statements to Schreibman

◼ Next, Katcher contends that the circuit court erred in allowing Schreibman to quote Katcher's threats of what he would do if Schreibman sued him. Schreibman testified that Katcher told him:

... [Y]ou'll never get this thing into court. Lawsuits are very expensive, I will run you out of money, it'll be amazing if you even get into a courtroom because you don't have a career now. And I fixed it so Enesco won't hire you anywhere else either. He says and number two, he says, this is going to be a mud-slinging contest like you never saw, I'm going to dig up every piece of dirt on you, by the time you finish the jury won't like you, they won't be able to deal with you, it'll confuse the issues of whether it's a partnership or not, and I might win. And he says and I don't care if you do win because I'm going to incorporate and incorporate and there'll be corporations inside of corporations, I'm going to have things set in my wife's name and all you're going to be left with is an empty bag anyway so you might as well go home, kid. And that's what Paul Katcher said to me on that day.

Katcher argues that this was irrelevant, highly inflammatory and prejudicial.

◼ Admission of evidence is a matter within a trial court's sound discretion, and we will not reverse its decision unless we find a clear abuse of discretion. *Brown v. Hamid*, 856 S.W.2d 51, 56 (Mo. banc 1993). We do not. Katcher's statements to Schreibman were relevant as contradicting Katcher's claim that no partnership existed and that he owed Schreibman nothing. Further, Schreibman was seeking punitive damages, and the evidence was relevant to Katcher's intentions or state of mind.

### Inconsistent Verdicts

◼ The jury found for Schreibman on all of his causes of action against Katcher, including two which Katcher argues were inconsistent. The jury found that Katcher made fraudulent misrepresentations to Schreibman that he wanted to, and intended to be, Schreibman's partner. The jury also found that Katcher breached the partnership agreement by refusing to pay Schreibman his share of the partnership after February 15, 1985, the day Katcher terminated their relationship.

Katcher argues, "The fraud count depended upon the non-existence of a partnership. The breach of partnership claim depends upon the existence of a partnership. Since the two verdicts cannot stand on an equal basis, only a verdict based on the evidence of a partnership can stand." Schreibman responds that the two causes were not contradictory:

The fraud submission ... does not rule out the finding of a partnership at some point. The jury was free to believe that at the beginning of this long relationship, Katcher lied to Schreibman and led Michael Schreibman to believe that he was Katcher's partner. The jury simply found that he was bound by the misrepresentations and his later actions and that Michael Schreibman should, therefore, be afforded the benefit of the bargain damages or what the victim of fraud or breach of partnership is entitled to under the law, plus damages on the fraud.

The circuit court merged the damages resulting from the breach of partnership with those resulting from the fraud action, a matter which Schreibman appeals and which we address later in discussing Schreibman's appeal. This merger should render any error inconsequential. Katcher, however, raises the issue for the purpose of avoiding the punitive damages which flowed from the fraud claim. He asserts that the circuit court should have merged the fraud damages with the breach of partnership damages because it "is not possible that the jury could ... have found that [Schreibman] was injured by ... a misrepresentation after it found that the parties were partners as [Katcher] represented they would be." We need not address this issue because we do not deem the actions to be inconsistent. As we discuss in dealing with Schreibman's appeal, we conclude that, notwithstanding the consistency of the verdicts, the circuit court properly merged the damages.

■ Liability in tort may co-exist with liability in contract arising out of the same events. *Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo.App.1991). Katcher is mistaken in believing that his lack of intent

to form a partnership prevented formation of a partnership with Schreibman.

■ Intent to form a partnership is not a requisite to formation of a partnership. The primary criterion for formation of a partnership is the parties' intent to enter a relationship which in law constitutes a partnership. *Prasse v. Prasse*, 77 S.W.2d 1001, 1005 (Mo.1934); *Bernard McMenamy Contractor, Inc. v. Kitchen*, 692 S.W.2d 817, 820 (Mo.App.1985). A partnership agreement may be implied from the parties' acts and conduct. *Schneider v. Schneider*, 347 Mo. 102, 146 S.W.2d 584, 588 (1940).

The jury could have concluded, therefore, that Katcher entered into a partnership agreement without intending or wanting to be Schreibman's partner. That the jury also concluded that Katcher lied about intending or wanting to be Schreibman's partner was not inconsistent with its conclusion that Katcher, by his acts and conduct, entered into a partnership agreement.

In addition to the fraudulent misrepresentations action and breach of partnership action, Schreibman claimed that Katcher converted partnership assets and breached their agreement concerning Schreibman's commissions. Katcher asserts that the jury's finding that the two had formed a partnership precluded verdicts for conversion and breach of contract for commissions. Because we conclude, for reasons explained in discussing Schreibman's cross-appeal, that the circuit court properly merged the conversion and breach of contract for commissions damages with the fraud verdict, it is not necessary to address this issue.

**Fraudulent Misrepresentation Instruction**

■ Katcher asserts the trial court erred in instructing the jury concerning Schreibman's fraud claim by not hypothesizing that Katcher knew at the time he made promises concerning the partnership that his promises were false and that he had no present intention of keeping the promises. The instruction said:

Your verdict must be for [Schreibman] if you believe:

First, defendant Katcher represented to plaintiff that he wanted and intended

that Schreibman be his partner in opening up the Amigo Showroom and the dealer business in Katcher's territory, intending that plaintiff rely upon such representation in entering into and continuing to do business with defendant Paul Katcher from 1978 through February 15, 1985, and

Second, the representation was false, and

Third, defendant Katcher knew it was false, and

Fourth, the representation was material to plaintiff Schreibman's decision to work with defendant, and

Fifth, plaintiff relied on the representation in entering into and continuing in the business with defendant Katcher from 1978 through 1985, and in so relying plaintiff was using ordinary care, and

Sixth, as a direct result of such representation, the plaintiff was damaged.

The phrase "ordinary care" as used in this instruction means that degree of care that would be reasonable in plaintiff's situation.

Although statements of future intention do not support a finding of fraudulent misrepresentation unless the person making the statements knows the statement is false when made, Schreibman was not claiming that Katcher misrepresented a promise of future conduct. Schreibman's claim was that Katcher represented that he wanted Schreibman to be his partner—then, at that moment—when he knew that the representation was false. The instruction, therefore, pleaded all of the necessary elements.

## Judgment Against the Katcher Corporations

Katcher complains that the circuit court erroneously entered the judgment against Katcher & Associates, Inc., Paul Katcher & Associates, Inc., and Paul M. Katcher & Associates, Inc., because the jury rendered a verdict only against Paul Katcher, individually. The verdict directing instruction for each of Schreibman's actions identified the defendant as only "defendant

Katcher." None of them named Katcher's corporations as defendants although Schreibman had also accused the corporations in his petition.

Errors in instructions do not constitute reversible error unless the party challenging the error was prejudiced. Only defects with substantial potential for prejudice will be deemed reversible error. *Crabb v. Mid-American Dairymen, Inc.*, 735 S.W.2d 714, 718 (Mo. banc 1987).

In trying the case, the parties used "Katcher" to refer collectively to Katcher personally and his corporations. During his opening statement to the jury, Katcher's attorney said:

... I represent Mr Paul Katcher, and there's several corporations that have been formed off and on over the years by Mr Katcher, they're all defendants in this case. During the course of this trial we're going to be using primarily Katcher, or Paul Katcher, or maybe sometimes saying Paul M. Katcher & Associates, I do not mean, and none of us, if we use that, do not mean to exclude any of the other defendants, if one or more of those terms are used it means to encompass all of them.[4]

During his testimony, Katcher referred to himself and his corporations interchangeably: "... I was a corporation[.]"

The circuit court entered its judgment in the belief that it was consistent with the parties' pretrial stipulation. Katcher now contends that the circuit court misunderstood the stipulation—that he intended to stipulate only that if any one of Katcher's corporations was found to be liable all of the corporations would be liable for the judgment. That is not what Katcher told the court. He said, "[W]e stipulated that [Katcher's corporations] would be liable for *any* judgment in this case." Later, he again said, "[W]e have stipulated that any one of these corporations are going to be responsible for *any* judgment that comes down." Still, a third time, Katcher told the court, "[W]e did stipulate that ... that the parties had agreed prior to trial that the corporations were liable for *any* judg-

---

**4.** He now contends that he meant for Katcher, Paul Katcher, and Paul M. Katcher & Associates to refer to only Katcher's corporations. This is not what he said.

ment[.]" We have searched the record for a copy of the stipulation and do not find one. By reading the transcript closely, we are inclined to believe that Katcher may be correct (we are by no means certain) in asserting that he described the stipulation more broadly than he should have. Given what he did say, we certainly understand why the circuit court concluded that the parties had stipulated that the corporations would be liable for any judgment—especially if the court was working without benefit of a written stipulation and given what Katcher had told the jury in opening statement.

Nonetheless, even if we were to assume that the parties did not stipulate in the way Katcher described the stipulation to the court, we fail to discern prejudice to the corporations and, therefore, do not discern reversible error. The parties tried the case as though the corporations and Katcher were one and the same. Katcher perpetuated this notion by his opening statement and by referring to himself as "a corporation." No one contends that the verdict directing instruction confused the jury. We dismiss the point. See *White v. Land Clearance for Redevelopment Authority,* 841 S.W.2d 691, 697 (Mo.App.1992).

### Schreibman's Appeal

**The Jury Verdicts**

■ Schreibman asserts in his appeal that the trial court erroneously concluded that the damage verdicts for breach of contract to pay commissions, for conversion of fixtures and samples, and for breach of partnership merged with the damage verdict for fraud. The circuit court concluded that the damages for conversion, breach of contract and breach of partnership duplicated the damages resulting from Katcher's fraudulent misrepresentation. We agree with the circuit court.

We are guided to that conclusion by *Kincaid Enterprises,* 812 S.W.2d at 892, in which the plaintiff sued to recover for breach of contract and fraud. The jury returned a verdict for the plaintiff on both claims. The trial court granted the defendant's motion for judgment notwithstanding the verdict as to

the fraud claim. The appellate court reversed, ruling that the trial court should have entered judgment on the fraud claim instead of the breach of contract claim:

> The purpose of an award of damages is to make the injured person whole by money compensation. An injury arises when the legal right of the person is violated.... A single transaction may invade more than one right, and the person injured may sue on more than one theory of recovery. The plaintiff, however, may not be made more than whole or receive more than one full recovery for the same harm....
>
> It is well to understand that a claim for breach of contract and a claim for fraudulent inducement to make that contract are not inconsistent remedies. A party who fraudulently induces another to contract and then also refuses to perform the contract commits two separate wrongs, so that the same transaction gives rise to distinct claims that may be pursued to satisfaction consecutively.... They may be joined in one pleading and submitted for verdicts in the same action.... The irregularity of the submission because they allow the jury to return the same damages albeit on two different theories of claim, is a matter subject to objection.... It is also a matter subject to waiver.

*Id.* at 900 (citations omitted). The court held that the plaintiff had not made allegations of special damages and that the damages awarded by the jury for the two claims were identical. It reasoned that if both verdicts were allowed to stand, the plaintiff would receive a "windfall of a double recovery." *Id.* It reversed and remanded with directions to set aside the verdict for breach of contract and to enter judgment for fraudulent representation. In explaining its instructions, it said:

> The measure of damages in a breach of contract case is the benefit of the bargain. Compensation is the value of the performance of the contract.... The measure of damages in a fraud case where the defrauded party retains the property—and in the absence of special damages—is the benefit of the bargain. Compensation is " 'the difference between the actual value

of the property and what its value would have been if it had been as represented.'"

*Id.* (citation omitted).

In Schreibman's case, both verdicts consisted of benefit of the bargain damages. The trial court correctly merged them.

Schreibman contends, however, that besides the damages for the value of his share of the partnership, he was entitled to recover for additional damages under his fraud claim. He cites *Dierker Associates, D.C., P.C. v. Gillis,* 859 S.W.2d 737, 750 (Mo.App.1993), for the proposition that a party may recover any damages proved on the fraudulent misrepresentations claim which are not co-extensive with the actual damages awarded on the breach of contract claim.

Schreibman seems to suggest that the breach of partnership verdict represented the benefit of the bargain damages, and the fraud verdict represented "much, much more" than the benefit of the bargain type damages. These additional damages, he claims, include the expense of moving his family to Kansas City and buying a home, giving up his sales work for Cardinal China, contributing to the rent payments, samples and fixtures for the showroom and working for six years for the partnership. Schreibman, however, did not plead special or consequential damages under his fraud claim. The damages awarded under the fraudulent misrepresentation claim, therefore, must merge with the breach of the partnership agreement damages.

Schreibman also contends that the jury's verdict for conversion damages should have been allowed to stand. He argues that his expert did not include samples and fixtures in his evaluation of the partnership's value; therefore, these damages were separate and independent from the damages found in the fraud claim. We disagree. Recovery for samples and fixtures is nothing more than benefit of the bargain damages. As assets of the partnership, these items would be included in the value of the partnership.

Moreover, just because Schreibman's expert did not specifically assign a value to assets in his evaluation does not allow a separate recovery for them. The fixtures and samples were used to promote the partnership business. They would constitute one of several factors contributing to the value of the partnership business.

Schreibman similarly argues that the jury's verdict for unpaid commissions represented a separate and distinct loss from the value of the partnership. Again, he contends that because his expert did not include it in his evaluation the verdict should be allowed to stand. We disagree. Unpaid commissions, like samples and fixtures, were the partnership's property, representing partnership income. The award for unpaid commissions was nothing more than benefit of the bargain damages for Schreibman's being a partner. Accordingly, the verdicts for damages under fraud and for damages for unpaid commissions represent the same benefit of the bargain damages and, therefore, must merge.

**Prejudgment Interest**

■ Schreibman contends that the circuit court erred as a matter of law in overruling his motion for imposition of prejudgment interest. Schreibman argues that he is entitled to prejudgment interest on all the jury verdicts; however, because we have concluded that the breach of contract, conversion and breach of partnership claims merged with the fraud claim, we need address only whether the circuit court erred in not imposing prejudgment interest on the fraud claim.

■ The general rule is that prejudgment interest is not recoverable on a tort claim unless the tortious conduct confers a benefit on the defendant. *Vogel v. A.G. Edwards & Sons, Inc.,* 801 S.W.2d 746, 757 (Mo.App.1990). Even assuming, however, that Katcher's tortious conduct resulted in a benefit for Katcher, Schreibman's request for prejudgment interest must fail because prejudgment interest is generally not recoverable on an unliquidated claim for damages. *Id.* Schreibman's claim for damages based upon fraudulent misrepresentation was not liquidated. The parties did not agree as to the measure of damages; indeed, it was a hotly-contested issue. The damages were not readily ascertainable; hence, the trial

court did not err in refusing to impose prejudgment interest.

Moreover, § 408.040.2, RSMo 1994, provides:

> In tort actions, if a claimant has made a demand for payment of a claim or an offer of settlement of a claim, to the party, parties or their representatives and the amount of the judgment or order exceeds the demand for payment or offer of settlement, prejudgment interest, at the rate specified in subsection 1 of this section, shall be calculated from a date sixty days after the demand or offer was made, or from the date the demand or offer was rejected without counter offer, whichever is earlier. Any such demand or offer shall be made in writing and sent by certified mail and shall be left open for sixty days unless rejected earlier. Nothing contained herein shall limit the right of a claimant, in actions other than tort actions, to recover prejudgment interest as otherwise provided by law or contract.

Schreibman did not establish that he complied with this statute. He does not even mention it. According to *Chambers by Abel v. Rice*, 858 S.W.2d 230, 232 (Mo.App.1993), "prejudgment interest in tort actions is recoverable only upon proof of fact demonstrating the requirements of § 408.040.2 have been met."

### Conclusion

Because we do not find reversible error in the points raised by the litigants, we affirm the circuit court's judgment.

All concur.