**Mark DOWNEY, Appellant,**

v.

**Jeff McKEE and June McKee and Michelle McKee, Respondents.**

**No. WD 65927.**

Missouri Court of Appeals,
Western District.

Jan. 23, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2007.

Application for Transfer Denied
May 1, 2007.

Richard W. Morefield, Jr., Kansas City, MO, for appellant.

Charles E. Weedman, Jr., Harrisonville, MO, for respondent.

Before THOMAS H. NEWTON, P.J., PATRICIA A. BRECKENRIDGE, and JOSEPH M. ELLIS, JJ.

THOMAS H. NEWTON, Presiding Judge.

### Facts and Procedural History

Mark Downey, a salesman for a golf and turf business, met and developed a friendship with one of his customers, Jeff McKee, a majority shareholder of Country Creek Golf Club. When the dealership he worked for was offered for sale, Mr. Downey and Mr. McKee tried to buy it, but their effort failed.

At the same time Mr. McKee had been building a new golf course (Hoot's Hollow) with his father. His father died during construction, and Mr. Downey offered to help Mr. McKee finish the golf course. The two had several discussions on this matter; during one of these discussions, Mr. Downey indicated that he would not leave his sales job unless he was an owner of the new golf course. After several weeks, they orally agreed to be equal partners or near equal partners,[1] to share profits and losses, the costs of construction, and to provide labor for the course. There was conflicting testimony as to whether Mr. McKee agreed to cosign a loan with Mr. Downey when funds were needed to complete the construction. To help Mr. Downey with income, Mr. McKee hired him to work for Country Creek. Mr. Downey thought Country Creek owned the land Hoot's Hollow was being built on; but, in fact, Mr. McKee's mother owned it.

Mr. Downey testified that the course would take two or three years to complete, but no time limit was placed on the partnership, nor was there any agreement on termination of the agreement. Further, some testimony indicated that they might incorporate in the future. Mr. McKee never told Mr. Downey that they did not have an agreement. In fact, Mr. McKee told Mr. Downey that he had an ownership interest.

Mr. McKee's wife, Michele McKee, was opposed to the partnership from the beginning. She told Mr. McKee that two of his key employees would quit working for the golf course because of Mr. Downey. One of the employees testified that he did not recall discussing Mr. Downey with Ms. McKee. The other testified that he did not have any problems working with Mr. Downey.

After Mr. Downey had worked on Hoot's Hollow for thirteen months, Mr. McKee told him, "It's over." Mr. Downey continued to work for Country Creek but ceased working on Hoot's Hollow. Mr. Downey sued Mr. McKee for breach of a partnership agreement and Ms, McKee for tortious interference with a partnership expectancy.

After a trial, a jury found for Mr. Downey and against Mr. McKee, awarding Mr. Downey actual damages for breach of the partnership agreement. The jury also found for Mr. Downey against Ms. McKee for tortious interference with a partnership expectancy awarding actual and punitive damages. The trial judge reduced the actual damages against Ms. McKee to zero to prevent a double recovery to Mr. Downey for the damages of losing his partnership expectancy. The trial court granted the McKees's motion for judgment not-

---

1. Either 50/50 partners or 51/49 partners with Mr. McKee having the larger share.

withstanding the verdict (JNOV) finding that the partnership agreement was invalid because it violated the statute of frauds. The trial court also granted JNOV because Mr. Downey failed to make a submissible case for punitive damages because Ms. McKee's conduct was insufficient to support punitive damages. Mr. Downey appeals, claiming that JNOV was incorrect because the statute of frauds did not apply. He also claims that sufficient evidence was presented to uphold the jury verdict awarding punitive damages against Ms. McKee for tortious interference. Finally, the McKees assert that one of the jury instructions was incorrectly given.

## I. JNOV was Improperly Granted Because the Statute of Frauds Does Not Apply to This Oral Agreement

■ First, we determine whether the statute of frauds acts as a bar to this case. In doing so we will assume that an oral partnership contract was made and determine whether that contract violates the statute of frauds. Under the order granting JNOV the trial court found that the oral contract violated the statute of frauds in two ways. First, the performance was not to be completed within one year. Second, it was a contract made for the sale of lands or an interest in or concerning them. Therefore, the contract should have been in writing. We disagree.

■ An oral contract that has the possibility to be completed within one year is not within the statute of frauds, even if the performance is expected to last much longer than a year. *Crabb v. Mid–Am. Dairymen, Inc.*, 735 S.W.2d 714, 716 (Mo. banc 1987). Contracts that do not expressly limit the time of the contract or that are terminable at will or with a notice period of less than one year may be completely performed within one year and are, therefore, outside the statute of frauds.

*Kansas City Stock Yards Co. v. Reich & Sons, Inc.*, 250 S.W.2d 692, 699 (Mo.1952) *overruled in part on other grounds by Gateway Chem. Co. v. Groves*, 338 S.W.2d 83, 86–87 (Mo.1960). A partnership agreement with no specific time limit is a partnership at will and may be dissolved at any time. *Gaty v. Tyler*, 33 Mo.App. 494, 496–97 (1888). Thus, the statute of frauds does not apply because the agreement was terminable within one year.

Here although the agreement to build and operate the golf course could not be completed within one year, because it would take longer than that to build the golf course, this does not control. First, the agreement was freely terminable within one year before the completion of any of the goals of the partnership. This is further supported by the fact that Mr. Downey was removed from the partnership after thirteen months, well before the completion of the golf course. Although this was not within one year, there is nothing special about the thirteenth month that prohibited the same action from being taken in the twelfth month. Furthermore, there is evidence that they intended to incorporate once they needed to borrow money, which could have easily occurred within one year.

■ Additionally, oral partnership agreements are valid if there was an intent to form such a relationship. *Kielhafner v. Kielhafner*, 639 S.W.2d 288, 289 (Mo.App. E.D.1982). If the party asserting an oral partnership is able to demonstrate by a preponderance of the credible evidence that the purported partners have a definite and specific agreement, then the oral agreement will stand without regard to the statute of frauds. *Nesler v. Reed*, 703 S.W.2d 520, 523 (Mo.App. E.D.1985); *See also Grissum v. Reesman*, 505 S.W.2d 81, 88 (Mo.1974).

Assuming for the moment that an agreement was reached, the evidence indicates that nothing in the agreement expressly indicated a time for the partnership to cease. Nor were any conditions set which would cause dissolution of the partnership.

This leaves open the question of whether the statute of frauds should apply because the agreement dealt with land. We find that the statute of frauds does not apply because the agreement did not involve land in any way that requires application of the statute of frauds.

■ The statute of frauds applies when a contract is "made for the sale of lands, tenements, hereditaments, or an interest in or concerning them." RSMo § 432.010 (2000). Nothing in the record indicates that the agreement between Mr. Downey and Mr. McKee was for the sale of land. The agreement was to build, own, and operate a golf course. A sale occurs when there is a transfer of ownership, title, or an interest in the land. *Shelby's Inc. v. Sierra Bravo, Inc.*, 68 S.W.3d 604, 606 (Mo.App. S.D.2002). Here, the evidence of the agreement makes no reference to a transfer of title, ownership or an interest in any property, so there was no sale of land and this section of the statute of frauds does not apply. Thus, no violation of the statute of frauds occurred. This point is granted.

## II. Sufficient Evidence was Submitted to Support the Punitive Damages Award Against Ms. McKee.

■ In reviewing submissibility of punitive damages, the court of appeals will review the evidence in the light most favorable to submissibility. *Carpenter v. Chrysler Corp.*, 853 S.W.2d 346, 364 (Mo. App. E.D.1993). Punitive damages require clear and convincing proof of a culpable mental state, "either by a wanton, willful or outrageous act, or reckless disregard

for an act's consequences (from which evil motive is inferred)." *Werremeyer v. K.C. Auto Salvage Co.*, 134 S.W.3d 633, 635 (Mo. banc 2004). The requisite mental state is found where a person intentionally does a wrongful act without just cause or excuse. *Hoyt v. GE Capital Mortgage Servs., Inc.*, 193 S.W.3d 315, 322 (Mo.App. E.D.2006). An evil motive and wanton behavior is exhibited when someone intentionally commits a wrong and knew that it was wrong at the time. *Id.* An evil intent may also be inferred when a person recklessly disregards the rights and interests of another person. *Id.*

■ A submissible case for punitive damages is made when the elements for tortious interference are satisfied. *Kerr Constr. Paving Co. v. Khazin*, 961 S.W.2d 75, 82 (Mo.App. W.D.1997); *Boyer v. Grandview Manor Care Ctr., Inc.*, 759 S.W.2d 230, 235 (Mo.App. W.D.1988). "It is well settled by Missouri law that a submissible punitive damage question is made for the jury once the plaintiff has presented sufficient evidence of legal malice-the intentional doing of a wrongful act without just cause or excuse." *Boyer*, 759 S.W.2d at 235 (internal quotation marks omitted). "A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." *Kerr Constr.*, 961 S.W.2d at 79. Absence of justification refers to the absence of a legal right to justify actions taken. *Id.* at 80. Because tortious interference involves an intentional wrong done without excuse, a submissible case for tortious interference necessarily includes a submissible case for

punitive damages. *Boyer*, 759 S.W.2d at 235.

■ We addressed the first element *supra.* Ms. McKee testified that she knew that Mr. Downey was told he would be an owner of Hoot's Hollow; thus, she knew about the relationship. She told her husband that two key employees were going to quit if the relationship with Mr. Downey continued, which the evidence establishes as a misrepresentation. She made these statements with the intent to end the relationship between Mr. Downey and Mr. McKee. Furthermore, there is no legal right to make misrepresentations in order to end a business relationship. The only justification given for not wanting to do business with Mr. Downey was that he was too much like a salesman, which is an inadequate reason for terminating a business relationship. Finally, evidence of the damages was presented at the trial. Thus, a submissible case for tortious interference was made. This point is granted.

## III. The Jury Instruction Did Not Need to Follow MAI 26.06 and Did Not Create a Roving Commission

■ After the trial, in addition to JNOV, the McKees requested a new trial, which was denied. They now ask this court to review the jury instruction in the event that we find that JNOV was improper. They assert that the jury instruction was improper because it did not follow MAI 26.06 and because it gave the jury a roving commission.

The jury instruction given was as follows:

You verdict must be for Plaintiff Mark Downey and against Defendant Jeff McKee if you believe:

First, Plaintiff Mark Downey and Defendant Jeff McKee, by words and conduct, entered into a partnership in Hoot's Hollow Golf Course, and

Second, Defendant Jeff McKee failed to pay Plaintiff Mark Downey his share of the value of the partnership business, and

Third, Plaintiff Mark Downey was thereby damaged.

The term "partnership" as used in this instruction means an association of two or more persons to carry on as co-owners a business for profit.

(hereinafter the submitted instruction)

Mr. McKee submits the following as an appropriate jury instruction:

Your verdict must be for Plaintiff if you believe:

First, Plaintiff Downey and Defendant Jeff McKee entered into an agreement to:

a) build Hoot's Hollow Golf Course; and

b) share equally in the construction costs of a new golf course; and

c) own Hoot's Hollow Golf Course; and

d) operate Hoot's Hollow Golf Course; and

e) if Plaintiff needed to borrow funds, Defendant McKee would co-sign a loan; and,

f) equally share in the profits and losses of Hoot's Hollow Gold Course; and

Second, Plaintiff Downey performed his agreement; and,

Third, Defendant Jeff McKee failed to perform his agreement; and,

Fourth, Plaintiff Downey was thereby damaged.

(hereinafter the alternative instruction)

This court in *Schreibman v. Zanetti* approved a jury instruction substantially similar to the submitted instruction. 909 S.W.2d 692, 699–700 (Mo.App. W.D.1995). The reasoning of *Schreibman* applies in this case as well. The jury instruction in the current case is patterned after section

358.060 as it was in *Schreibman.* *Id.* at 700. Additionally, the *Schreibman* court held that MAI 26.06 was inappropriate in an action for breach of a partnership agreement. Id. Thus, the alternative instruction that Mr. McKee asks us to adopt is a misstatement of the law because it is patterned on an MAI that does not apply.

 A further problem with the alternate jury instruction is in the following language: "Second, Plaintiff Mark Downey performed his agreement." "[P]erformance of the partnership agreement is not required for a partner to receive his share of the partnership." *Id.* The instruction was not required to follow MAI 26.06 and was properly submitted.

 Additionally, the McKees argue that the definition of partnership left out a crucial element of the definition: that the partners share in losses as well as in profits. We cannot rule that a jury instruction definition taken directly from the statute is incorrect.

 The McKees also assert that the jury instruction created a roving commission because the instruction used the broad phrase "by words and conduct, entered into a partnership in Hoot's Hollow Golf Course." In order to avoid confusion and bias, a jury instruction is proper only if it submits ultimate facts and does not submit evidentiary details. *Moore ex rel. Moore v. Bi–State Dev. Agency,* 87 S.W.3d 279, 293 (Mo.App. E.D.2002). On review, we determine whether the instruction follows the substantive law and can be easily understood by the jury. *Id.* We view the evidence most favorably to the instruction, disregarding contrary evidence. *Id.* A roving commission is a jury instruction that "assumes a disputed fact or submits an abstract legal question that allows the jury 'to roam freely through the evidence and choose any facts which suited its fancy or its perception of logic,' to impose liability." *Id.* (citation omitted)

 The jury instruction was not a roving commission because it did not assume any disputed facts or submit abstract legal questions to the jury. "A partnership agreement may be implied from the parties' acts and conduct." *Schreibman,* 909 S.W.2d at 701. The phrase "by words and conduct" perfectly encapsulates the legal concept of an implied partnership. In order to determine that such a partnership has been created, the jury must look at all the conduct and words of the parties to the alleged agreement in order to determine if the words and conduct are sufficient to imply an agreement, and to examine any words and conduct that cuts against an agreement. Thus, this instruction does not give the jury a roving commission, because it instructs them correctly as to what the jury is to look at in making its decision: the words and conduct of Mr. Downey and Mr. McKee that support and deny a partnership agreement. The jury instruction did not create a roving commission and was properly submitted. This point is denied.

For the foregoing reasons, we reverse the trial court's ruling on JNOV and remand for the trial court to reinstate the verdicts for Mr. Downey.

PATRICIA A. BRECKENRIDGE, and JOSEPH M. ELLIS, JJ. concur.