The STATE of Texas, Appellant,

v.

Benny Lee SKILES, Appellee.

No. 2–93–111–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 9, 1994.

Rehearing Overruled March 15, 1994.

Patrick A. Myers, Zachry, Myers, Myers & Gray, Fort Worth, for appellee.

Tim Curry, Crim. Dist. Atty., Betty Marshall and Charles M. Mallin, Asst. Chiefs of Appellate Section, Michael A. Klein, Asst. Crim. Dist. Atty., Fort Worth, for appellant.

Before LATTIMORE, DAY and FARRAR, JJ.

## OPINION

LATTIMORE, Justice.

The State appeals from a trial court determination that the appellee, Benny Lee Skiles, was illegally stopped by the police in an unconstitutional checkpoint. The trial court subsequently ordered the suppression of all evidence seized as a result of the initial stop. In one point of error, the State complains that there is neither a factual or legal basis for the trial court's determination that Skiles was illegally stopped by the authorities at a checkpoint, and that consequently the trial court's order suppressing all evidence seized as a result of the stop should be set aside.

We affirm the trial court's suppression order.

On Saturday night, January 4, 1992, Fort Worth police officers Holzschuh and Black blocked off the westbound lane of 24th Street in the Stockyards area of Fort Worth. The area has a high concentration of traffic, which is exacerbated by cruising on Saturday nights. Between the hours of 10:00 p.m. on January 4th and 2:15 a.m. on January 5th, five to eight police officers stood along a forty-yard stretch of 24th Street with flashlights looking in car windows as they drove past the officers. When the officers saw a violation of the traffic laws, they would pull that car into the blocked off lane to write the ticket. At times the police would hold up traffic to allow pedestrians to cross or to take violators out of the flow of traffic. Otherwise, the police would not impede the flow of traffic, which varied from slow, to stop and go, to "backed up." At about 2:00 a.m., Skiles passed Officer Holzschuh's station on 24th Street, and was observed not wearing his seat belt. Other officers stopped Skiles in the middle of the street, and then ordered him to pull over to the curb. Skiles was arrested for the offense of driving while intoxicated.

Officer Holzschuh testified that the westbound lane of 24th Street was blocked so that the officers would have a protected place to stand, to prevent head-on collisions, to promote a smoother flow of eastbound traffic, and to discourage cruising by writing tickets. There was no order issued from headquarters to set up a roadblock, or to otherwise control the traffic. Officers Holzschuh and Black acted on their own initiative. They requested and received additional officers to man the street, however. The officer admitted that their actions necessarily did restrict traffic.

The question before us is whether the police action constituted a traffic checkpoint, or if this police detachment was merely a stationary foot patrol along a single lane street that incidentally observed traffic and handed out tickets for violations it observed. If this was a checkpoint, then we must hold, as the trial court did, that the DWI arrest occurred as a direct result of a violation of Skiles' constitutional rights. The Supreme Court, in *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990), has held that a sobriety checkpoint may be constitutional if it meets the three part balancing test announced in *Brown v. Texas*, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), which involves "balancing the state's interests in preventing accidents caused by drunk drivers, the effectiveness of sobriety checkpoints in achieving that goal, and the level of intrusion on an individual's privacy caused by the checkpoints." *Sitz*, 496 U.S. at 449, 110 S.Ct. at 2484, 110 L.Ed.2d at 419. Here, the State offered no data to the trial court about the necessity and effectiveness of the traffic checkpoint deterrence in relation to traditional means of deterring traffic violations. *See State v. Van Natta*, 805 S.W.2d 40, 41–42 (Tex.App.–Fort Worth), *pet. ref'd per curiam*, 811 S.W.2d 608 (Tex.Crim.App.1991). Rather than attempt to meet the *Brown* balancing test, the State argues that the police action was not a checkpoint at all.

The trial judge is the sole and exclusive trier of facts at the hearing on a Motion to Suppress. On appeal a reviewing court does not engage in its own factual review but decides whether the trial judges findings are supported by the record. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). The trial court's findings will not be disturbed absent a clear abuse of discretion. *Dancy v. State*, 728 S.W.2d 772, 777 (Tex. Crim.App.), *cert. denied*, 484 U.S. 975, 108

S.Ct. 485, 98 L.Ed.2d 484 (1987). We must view the evidence in the light most favorable to the trial judge's ruling. *See Daniels v. State,* 718 S.W.2d 702, 704 (Tex.Crim.App. 1986), *overruled on other grounds,* 758 S.W.2d 772 (Tex.Crim.App.1988); *Walker v. State,* 588 S.W.2d 920, 924 (Tex.Crim.App. 1979). Here, the evidence suggests that a group of five to eight police officers blocked one lane of traffic on a two lane street, so as to create a protected place to stand as they inspected cars that passed their position. The officers manned the position for over four hours, with the express purpose of handing out traffic citations. The area had a high concentration of drinking establishments, and the time period, from 10:00 p.m. Saturday night, to 2:15 a.m. Sunday morning, just after the closing time for bars in the area, suggests that enforcement of the DWI laws may have been a motive for the action. The police testified that they looked into the passing cars with flashlights, and that they were close enough to the passing cars to hold conversations with the drivers. The actions of the officers were not approved or controlled by any higher authority. The only fact uncovered in the hearing which suggests that the police action was not a checkpoint is that the passing cars were not stopped completely unless a violation was apparent. However, by blocking one lane of traffic, and positioning a number of officers along that single lane of slow moving traffic, it would not have been necessary to completely stop traffic to perform the observation functions of a sobriety checkpoint. We hold that the trial judge had sufficient evidence to conclude that the police action was a traffic checkpoint, which violated Skiles' rights under the Fourth Amendment of the U.S. Constitution.

The trial court's suppression order is affirmed.