**CENTURY MANAGEMENT, INC., Jerry E. Clemons, and Patricia Lee Clemons, Appellants,**

v.

**Shari Lea SPRING, Robert Bair, Jan Bair, Dick Smith, Robin Smith, Fran Ronnau, Everett Davis, Josephine Davis, James McAtee, Gordon Hadley, and Paul Fred Kirk, Respondents.**

No. WD 50324.

Missouri Court of Appeals, Western District.

Aug. 29, 1995.

David Hargrave, Kansas City, for appellants.

David Buchanan, Stephen Millin, Jr., Kansas City, for respondent Lea.

Donald P. Herron, Kansas City, for respondents Bair.

Robert E. Gould, William L. Carr, Kansas City, for respondent Ronnau.

Before HANNA, P.J., and BERREY and SPINDEN, JJ.

SPINDEN, Judge.

After members of the Walden Homeowners Association circulated a document complaining about the way their subdivision was being managed, the managers, Century Management, Inc., Jerry E. Clemons and Patricia L. Clemons,[1] sued for defamation and for tortious interference with business expectancy. The circuit court granted summary judgment for the association members

---

1. We refer to Century Management, Inc., Jerry Clemons, and Patricia Clemons collectively as CMI.

on both counts. It ruled that the members of the association enjoyed a qualified privilege which protected against liability for defamation, and it ruled that CMI had no business expectancy in a renewed contract.

CMI asserts that this was error because it established a genuine issue of whether the members acted with malice in derogation of any privilege they enjoyed as members of a homeowners association and because it established that, but for the respondents' defamatory accusations, the association's board of directors would have renewed CMI's contract. We disagree and affirm the circuit court's judgment.

CMI managed real estate. Jerry Clemons owned all of its stock and was its president. His wife, Patricia Clemons, was its secretary.

On March 20, 1990, the Walden Homeowners Association hired CMI to manage the subdivision's common grounds for three years, until May 31, 1993. CMI had managed the subdivision's common grounds for the previous 11 years.

Shari Spring, Gordon Hadley, Paul Kirk, Everett Davis, Josephine Davis, Dick Smith, Robert Bair, Jan Bair, James McAtee, and Fran Ronnau (respondents) belonged to the homeowners association, a not-for-profit corporation controlled by a board of directors. Owners of houses and townhouses in the subdivision elected the board members.

Many, if not all, of the respondents belonged to a group known as the Townhomes Liaison Subcommittee. Robert and Jan Bair and Shari Spring headed the group. The record does not explain the group's origin or whether the association's constitution and bylaws sanctioned it.

During Fall 1991, the association's board of directors asked Robert Bair and Fran Ronnau to inform it of any complaints concerning CMI's performance. Robert Bair prepared a list of numerous complaints, including allegations that CMI had misled the association concerning what work CMI was doing and the manner in which CMI was doing it. Robert Bair took the list to Ronnau for her review. Ronnau suggested that they attach a cover letter, and they did. The cover letter was addressed to CMI from the board of directors. Together, Robert Bair and Ronnau copied their letter and list of complaints and distributed them to board members.

The subcommittee later decided, for reasons not explained in the record, to distribute a copy of the document to all of the houses and townhouses in the subdivision. The decision was made at a meeting attended by all of the respondents except Ronnau. The respondents donated money to defray copy and delivery costs. Robert and Jan Bair and Shari Spring reviewed another cover letter to attach to the previous cover letter and the list of complaints. The second letter encouraged association members to put their association dues in an escrow account instead of paying them to CMI and explained that the list of complaints was "representative ... of concerns and causes for placing our dues in escrow." In October 1991, Shari Spring, Eldon and Josephine Davis, Gordon Hadley, Fred Kirk, and Dick Smith delivered copies of the document to every house and townhouse in the subdivision.

Two weeks later, CMI sued the respondents for defamation and libel and for tortious interference with a contract or business expectancy. In the meantime, CMI continued to manage the subdivision property until its contract with the homeowners association expired on May 31, 1993. Association members voted against renewing the contract.

In response to the lawsuit, respondents filed motions for summary judgment. As to the defamation claim, the trial court granted summary judgment in favor of all respondents and said:

1. That the written communication that is the subject of this cause was circulated between the members of the Walden Home Owners Association of which all the Defendants herein were members.

2. That all of the aforesaid Defendants had a common interest in the subject matter of the communication because all of the Defendants were property owners in addition to being members of the Association.

3. That some of the Defendants claim that they did not participate in the distribution of the document.

4. That all of the Defendants had a qualified privilege to participate in the distribution of the document among the members of the Association.

5. That there is no evidence to indicate that the circulation of the document would take them out of the qualified privilege.

IT IS THEREFORE ORDERED that Defendants' Motions for Summary Judgment as to Count I of [CMI's] Petition for Defamation is sustained.

■ We agree, and CMI concedes, that the respondents enjoyed a qualified privilege whereas this was a case in which the publishers of the allegedly defamatory statements (the respondents) and the recipients (fellow association members) had a common interest (upkeep of their subdivision) and the communication was of a kind reasonably calculated to further that interest. *See Henry v. Halliburton,* 690 S.W.2d 775, 780–81 (Mo. banc 1985). The privilege, however, was not absolute. The privilege protected the respondents only for so long as they acted in a reasonable manner and for a proper purpose. Unreasonable use of a privilege for an improper purpose, such as perpetrating a deliberate lie, will forfeit the privilege. *See Hellesen v. Knaus Truck Lines, Inc.,* 370 S.W.2d 341, 345 (Mo.1963).

■ CMI argues that it established a genuine issue of whether the respondents forfeited the privilege by circulating their complaints anonymously and with the suggestion that it was from the association's board of directors.

We disagree. Although one of the cover letters prepared by the respondents said that it was from the "Walden Homeowners Association Board of Directors" to CMI, the other cover letter, addressed to "Walden Neighbor," said:

[A]fter trying every way we knew to work *with* the management company and the Board of directors, ... several townhome members spoke in private audience with six members of the board who were present. Nearly all those addressing the board expressed dissatisfaction with the attitude and business practices of the management company.

. . . .

Currently, the attached list of concerns is in the hands of Walden's attorney as requested by the board. Several of the most serious concerns cannot be published because they are currently under investigation. These concerns, together with the apparent attitude of some board members that we *must* entrust our money to our current management company while they delay terminating this company which we TRULY BELIEVE HAS VIOLATED OUR TRUST, forces us at this time to make our concerns publiand [sic] also to inform all members that the escrow fund for the homeowners' dues is operational at this time if any one wishes to pay their dues on time but not into the hands of the management company.

Therefore, we submit this representative list of concerns and causes for placing our dues in escrow.

For more information regarding the above, please call 587–0944.

■ To grant summary judgment, the circuit court had to find a lack of *genuine* issue of fact. "A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous. Where the 'genuine issues' raised by the non-movant are merely argumentative, imaginary or frivolous, summary judgment is proper." *ITT Commercial Finance Corporation v. Mid–America Marine Supply Corporation,* 854 S.W.2d 371, 382 (Mo. banc 1993).

The circuit court properly granted summary judgment on this issue. Read together, the letters made clear that the list of complaints originated with a dissident group made up primarily of "townhome members."

■ Nonetheless, a false statement—even one which might otherwise be actionable—will not vitiate a privilege so long as the defendants act without malice. *Hellesen,* 370 S.W.2d at 345. Any reasonable and appropriate method of publication may be adopted which fits the purpose of protecting the particular interest. That the respondents did not sign their names was not unreasonable. It may have diminished the persuasiveness of their document, but circulat-

ing an anonymous list of complaints was not unreasonable under the circumstances.

 CMI also failed to raise a *genuine* issue of fact concerning whether the respondents acted with malice. Malice, in defamation cases, means that the defendant knows that the statement is false or that he has reckless disregard for determining whether it is true. *Smith v. UAW–CIO Federal Credit Union*, 728 S.W.2d 679, 683 (Mo.App. 1987).

CMI points to deposition testimony in which two respondents said that they were aware that certified public accountants had examined association books without finding problems. The circuit court was justified in concluding that this evidence did not create a genuine issue. A CPA's findings of an audit of financial records would not address the issues raised by the respondents in their list of complaints. The respondents' complaints concerned such matters as CMI's showing favoritism toward certain residents, misreporting the work it had performed, not doing all it could to save two trees, obtaining single bids from contractors, not handling a dangerous lawn chemical properly, and misassigning subdivision employees. CMI's evidence did not sufficiently controvert the deposition testimony of Robert Bair who testified:

Q [W]hat I am trying to find out, Mr. Bair, did you publish this article recklessly, without checking out the facts before you turned them on Mr. Clemons, and I would like for you to tell me then what you did to verify that he was, in fact, dishonest?

. . . .

A In every case, to the best of my recollection, ... I was either witness to, party to or sought secondary confirmation of anything that is in here.

Q ... And secondary confirmation, is that—are you using a newspaper term there?

A No, I just made that up. I didn't just take one person's word for anything.

The circuit court properly concluded that a genuine issue did not exist concerning whether the respondents acted with malice in publishing the document as they did. We affirm the circuit court's summary judgment for respondents on the defamation count.

As to CMI's claim that respondents tortiously interfered with its contract or business expectancy, the circuit court also granted the respondents' motions for summary judgment. Its order said:

1. The contract between [CMI] and the Walden Home Owners Association terminated on May 31, 1993 and the Association chose not to renew the contract which the Association had a right to do.

2. [CMI] claim[s] that the distribution of the document in question induced a premature breach of the contract.

3. [CMI] and the Association operated under the aforesaid contract for 21 months after the distribution of the document in question.

4. That all of the Defendants had a financial and property interest in protecting their property values which were directly affected by the performance under the terms of this contract and as such were justified in sending or participating in the sending of the document in question.

5. That even if the sending of the document in question or participating in the distribution of said document caused the breach of the contract in question, which the Court finds that it did not cause such a premature breach, the Defendants would have been justified in distributing such a document to the other members of the Homeowners Association.

IT IS THEREFORE ORDERED that the Defendants' Motions for Summary Judgment as to Count II of [CMI's] petition regarding tortious interference with a contract or business expectancy are sustained.

CMI contends that this order was error because it established that, "but for" respondents' defamation of its reputation, its business expectancy and relationship with the homeowners association would have continued.

 CMI's claim, in effect, was that the respondents were tortiously interfering with their own contract with CMI. CMI's contract was with the association of which

the respondents were members. An action for tortious interference with a business expectancy will lie against only a third party. *White v. Land Clearance for Redevelopment Authority,* 841 S.W.2d 691, 695 (Mo.App. 1992). Otherwise, any time an association member voices opposition to the association's contracting with a party, he or she is liable for tortious interference. The point is without merit.

The judgment of the trial court is affirmed.

All concur.